**In the Matter of DeLOREAN MOTOR COMPANY, a Michigan corporation, Debtor.**

**Bankruptcy No. 82–06031–W.**

United States Bankruptcy Court, E.D. Michigan, S.D.

June 20, 1983.

Lawrence K. Snider, Detroit, Mich., for DeLorean Motor Co.

Robert B. Weiss, Detroit, Mich., for Creditors' Committee.

Lisa S. Miller, Southfield, Mich., for Associated Press.

Howard L. Weitzman, Los Angeles, Cal., for John Z. DeLorean.

## ORDER DENYING MOTION OF JOHN Z. DeLOREAN FOR PROTECTIVE ORDER AND FOR SEALING OF DOCUMENTS

GEORGE E. WOODS, Bankruptcy Judge.

### I. Introduction

This matter is before the Court on the motion of John Z. DeLorean for protective order. John Z. DeLorean requests that all documents, books, records, writings, and transcripts produced regarding the depositions of Eric Javits and Stuart Sieger, or which refer in any manner to the contents of such depositions, be filed under seal.

The Court, having heard the arguments of counsel, read the briefs submitted herein and reviewed the transcripts and exhibits at issue, hereby denies the motion of John Z. DeLorean for protective order and for sealing of documents based on the following findings and conclusions.

### II. Factual Background and Findings

In October of 1982, Stephen Arrington, John Z. DeLorean and William Hetrick were indicted in Los Angeles on charges of violating federal narcotics statutes. Also in October of 1982, DeLorean Motor Company (DMC) filed for relief under Chapter 11 of the Bankruptcy Code in the Eastern District of Michigan. The legal proceedings surrounding John Z. DeLorean's indictment and the bankruptcy of DMC have created much public interest and received extensive press coverage.

Eric Javits was former counsel for DMC and a member of the Executive Committee of the Board of Directors of DMC. Stuart Sieger is a partner in the former firm of Javits and Javits and also provided legal services to DMC.

In the context of the bankruptcy proceedings, the creditors' committee of DMC moved the Court to enter an order requiring the examinations of Javits and Sieger. The order was entered and a subpoena, issued from the United States Bankruptcy Court for the Southern District of New York, duly served. The examination of

Eric Javits commenced on May 3, 1983. Counsel for John Z. DeLorean attended the examination and asserted the attorney-client privilege, on behalf of John Z. DeLorean and DeLorean-related entities other than DMC, to various questions. A similar scenario occurred during the May 23, 1983 examination of Stuart Sieger.

At the completion of the examinations, counsel for the creditors' committee expressed his intention of filing a motion to compel answers. As of the date of this writing, the motion has not been filed.

On June 1, 1983, John Z. DeLorean filed the present motion for protective order, pursuant to Bankruptcy Rule of Procedure 918 and Federal Rule of Civil Procedure 26(c), and a supplemental brief. The creditors' committee filed a brief in opposition.

An open hearing on the motion was held on June 15, 1983. Appearances were made by counsel for John Z. DeLorean, counsel for DMC, counsel for the creditors' committee, counsel for the Associated Press, Yale Levin, a member of the firm Price Waterhouse & Company, the court-appointed examiner for DMC, and James Walsh, prosecutor in the criminal matter involving John Z. DeLorean. The matter was taken under advisement pending review by the Court of the transcripts and documents at issue.

Prior to the June 15, 1983 hearing, the Ninth Circuit Court of Appeals reversed a holding of the District Court in the John Z. DeLorean criminal proceeding requiring *in camera* filing of all documents. The Ninth Circuit ruled that the order was a restriction on the public's First Amendment right to access. *Associated Press v. United States District Court for the Central District of California,* 705 F.2d 1143 (9 Cir. 1983).

### III. Legal Analysis and Conclusions

Bankruptcy Rule of Procedure 918 allows a court to issue any order to "protect any person against scandalous or defamatory matter contained in any paper filed in a bankruptcy case." Federal Rule of Civil Procedure 26(c), made applicable by Bankruptcy Rule 726, authorizes a court to issue a protective order for "good cause shown".

▮ Although there exists a First Amendment right of access to pre-trial proceedings and related documents, it is undisputed that the right to inspect and copy judicial records is not absolute. Every court has supervisory power over its own records and files and access has been denied where court records have become a vehicle for improper purposes. *Krause v. Rhodes,* 671 F.2d 212, 218 (6th Cir.1982) *cert. denied,* —— U.S. ——, 103 S.Ct. 54, 74 L.Ed.2d 59, *quoting Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 597–598, 98 S.Ct. 1306, 1311–12, 55 L.Ed.2d 570 (1978).

▮ The decision as to access is within the discretion of the trial court. *Krause,* 671 F.2d at 219. The Court must balance First Amendment concerns against legitimate privacy rights and the right to a fair trial. The Sixth Circuit has recognized three criteria by which a trial court is to evaluate any protective order impinging on First Amendment rights: the harm posed by dissemination must be substantial and serious; the restraining order must be narrowly drawn; there must be no alternative means of protecting the public interest. *Krause,* 671 F.2d at 219, *quoting In Re Halkin,* 598 F.2d 176, 191–192 (D.C.Cir. 1979). The Ninth Circuit has recognized an additional consideration: there must a substantial probability that closure will be effective in protecting against the perceived harm. *Associated Press,* at 1147, *citing United States v. Brooklier,* 685 F.2d 1162, 1167 (9th Cir.1982).

▮ Turning first to the precision of the proposed restriction, an order restricting expression must be no broader than absolutely necessary to protect countervailing rights. *In Re Halkin,* 598 F.2d at 193. The protective order proposed by John Z. DeLorean is clearly too broadly drawn to satisfy this mandate. Nevertheless, because a protective order may often be tailored to avoid many of the infirmities associated with judicial restraints on expression, the remaining criteria must be examined.

Of highest concern is the extent of the harm posed by dissemination. John Z. DeLorean contends that the public perception of the assertion of an attorney-client privilege is a damaging one, which threatens to undermine his integrity and impinge on his right to a fair trial. The Court does not agree. The attorney-client privilege is the oldest privilege recognized at common law. Its purpose is to encourage full disclosure by a client to his attorney and thereby further the administration of justice. This Court credits the media with a fundamental understanding of the nature of the privilege. Additionally, the Court notes that, although both the criminal and bankruptcy proceedings have consistently received extensive publicity, the Ninth Circuit has refused to grant a blanket protective order, ruling that pre-trial publicity even if pervasive cannot be regarded as automatically leading to an unfair trial. *Associated Press,* at 1146, *quoting Nebraska Press Association v. Stuart,* 427 U.S. 539, 565, 96 S.Ct. 2791, 2805, 49 L.Ed.2d 683 (1976).

Intimately related to any consideration of the harm posed by dissemination is a weighing of the probability that closure will be effective in protecting against the perceived harm. As the Ninth Circuit has emphasized, there is currently no shortage of information for the media to exploit, should it choose to do so. *Associated Press,* at 1147. More germane to the present proceeding, John Z. DeLorean's assertion of the attorney-client privilege is already a matter of public record. John Z. DeLorean's motion discloses the assertion and the Court takes judicial notice that the press has reported such disclosure. See, "Should DeLorean Depositions Be Public?", *The Detroit Free Press,* June 16, 1983. Therefore, only the nature of the questions remains unknown. Having carefully reviewed the transcripts, it is the considered judgment of this Court that speculation as to the subject matter of the questions is substantially more prejudicial to John Z. DeLorean than disclosure itself.

The final consideration requires a showing that a protective order is the least intrusive means of achieving the goals of protecting the fairness of the judicial process. John Z. DeLorean has failed to make such a showing. Several alternatives are available to protect John Z. DeLorean's

right to a fair trial in the criminal proceedings, including voir dire and explicit cautionary instructions to the jury. *In Re Halkin,* 598 F.2d at 195, *quoting Nebraska Press Association,* 427 U.S. at 563–564, 96 S.Ct. at 2804. *See also, Associated Press,* at 1147. Additionally, John Z. DeLorean has the option of renewing his motion for a protective order at a later date, should the anticipated motion to compel by the creditors' committee be granted.

In summary, a protective order is an extraordinary device. We perceive nothing in the record of this case to warrant such a measure under either Bankruptcy Rule of Procedure 918 or Federal Rule of Civil Procedure 26(c). Were a protective order granted each time a question bearing peripherally on a pending criminal matter elicited a response of privilege, First Amendment rights would be severly curtailed. For the foregoing reasons, the motion of John Z. DeLorean for protective order and for sealing of documents is DENIED.

It is so ordered.