**In re Robert G. NUNN, III, Debtor.**

**Bankruptcy No. 84–01312–A.**

United States Bankruptcy Court,
E.D. Virginia,
Alexandria Division.

June 14, 1985.

John M. Ballenger, Ballenger and Vogelman, Alexandria, Va., for Nat. Commerce Exchange of Wash.

H. Bradley Evans, Thomas & Fiske, Alexandria, Va., trustee in bankruptcy.

Norman Oliver, Alexandria, Va., Office of the U.S. Trustee.

## MEMORANDUM OPINION

MARTIN V.B. BOSTETTER, Jr., Bankruptcy Judge.

This matter was precipitated by the filing of an unopposed motion for a protective order by National Commerce Exchange of Washington ("NCE"). NCE seeks the entry of an order limiting access to Schedule A attached to the bankruptcy petition of Robert G. Nunn, III, debtor herein.

NCE, a Virginia Limited Partnership which is a listed creditor in this proceeding, is a reciprocal trade exchange which acts as a broker serving members of the exchange who wish to trade or barter their goods or services with other members.

Until October 1, 1983, the debtor was one of the general partners of NCE. Because of his former relationship with NCE, the debtor named the members of NCE on his Schedule A as contingent personal creditors when he filed his petition under Chapter 7 of the Bankruptcy Reform Act of 1978 ("the Code"), 11 U.S.C. § 101 *et seq.*, on October 4, 1984.

In its application for a protective order, NCE asserts that its business is very competitive both in the region and throughout the nation. The members of the exchange pay NCE an annual membership as well as commissions on each trade. Because of the commercial value of the names and addresses of its members contained in debtor's Schedule A, NCE moves this Court under section 107(b) of the Code to limit access to debtor's Schedule A to those persons who can demonstrate to the Court good cause for such access other than a desire for competitive information.

During the hearing held on NCE's motion on October 30, 1984, the Court instructed NCE's counsel to prepare a memorandum in support of its motion and took the matter under advisement. Counsel did not file such a memorandum until April 29, 1985. Debtor's Schedule A remained available to the public for the intervening six-month period.

Section 107(a) provides that papers filed in a case under Title 11 of the United States Code are of public record. 11 U.S.C. § 107(a). This is merely a codification of the common law general right to inspect judicial records and documents. *See Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 597–98, 98 S.Ct. 1306, 1311–12, 55 L.Ed.2d 570 (1978). Courts have recognized, however, that the right of access to judicial records is not absolute but may be denied when the Court feels that the entity seeking to view the records has an improper purpose. *See id.* and cases cited therein. This limitation was recognized by Congress

through its enactment of section 107(b) of the Code.[1]

Rule 9018 of the Rules of Bankruptcy Procedure sets forth the procedure for invoking section 107(b). The rule provides that the court on motion or *sua sponte* may enter an order "to protect the estate *or any entity* in respect of a trade secret or other confidential research, development, or commercial information ..." (emphasis added). R.Bank.P. 9018. The term entity is used both in Rule 9018 and in section 107(b). *Id.*; 11 U.S.C. § 107(b). Entity is defined as including a "person, estate, trust, and governmental unit." 11 U.S.C. § 101(14). In turn, a "person" includes an "individual, partnership, and corporation." 11 U.S.C. § 101(33). There is no doubt but that an organization such as NCE would be included within the protective scope of Rule 9018.

 Congress intended the sealing of pleadings to be the exception rather than the rule. *Hope on Behalf of Clark v. Pearson,* 38 B.R. 423, 425 (Bankr.M.D.Ga. 1984). Furthermore, for the Court to enter a protective order, limitation of access must not only be an appropriately responsive remedy, but also, there can be no less drastic alternative available. *See Associated Press v. United States District Court for the Central District of California,* 705 F.2d 1143, 1146 (9th Cir.1983), *citing United States v. Brooklier,* 685 F.2d 1162, 1167 (9th Cir.1982) (criminal proceedings). Furthermore, an application for a protective order is within the sound discretion of the Court. *Hope on Behalf of Clark v. Pearson,* 38 B.R. at 424; *Matter of DeLorean Motor Co.,* 31 B.R. 53, 55 (Bankr.E.D.Mich. 1983).

There are few published opinions interpreting the application of section 107(b). *See In re Itel Corp.,* 17 B.R. 942, 946 (Bankr. 9th Cir.1982); *Hope on Behalf of Clark v. Pearson,* 38 B.R. 423, 425 (Bankr.

---

1. 11 U.S.C. § 107(b) states in pertinent part: (b) On request of a party in interest, the bankruptcy court shall, and on the bankruptcy court's own motion, the bankruptcy court may—

(1) protect an *entity* with respect to a trade secret or confidential research, development or commercial information....
11 U.S.C. § 107(b) (emphasis added).

M.D.Ga.1984). In *Itel,* the debtor-in-possession filed an application to impound a list of debenture holders. *In re Itel Corp.,* 17 B.R. at 942–43. In its application, the debtor-in-possession alleged that "various sophisticated investors are attempting to utilize the debtor's financial difficulties to purchase the debtor's debentures from public debenture holders at depressed prices...." *Id.* The bankruptcy court entered an order impounding the list of debenture holders on the same date the application was filed.

On appeal, the Bankruptcy Appellate Panel for the Ninth Circuit reversed and remanded the bankruptcy court's decision. *Id.* at 946. In discussing section 107(b), the Bankruptcy Panel stated that "[i]t is obvious that withholding of commercial information is directed toward not affording an unfair advantage to competitors by providing them information as to the commercial operations of the debtor." *Id.* at 944. The Bankruptcy Panel continued, however, by finding that it was unlikely that a listing of the identity and addresses of creditors would fall into such a category of protected information. *Id.*

Similarly, a motion for a protective order was filed in proceedings before the United States Bankruptcy Court for the Middle District of Georgia. *Hope on Behalf of Clark v. Pearson,* 38 B.R. 423 (Bankr.M.D. Ga.1984). In the *Hope* case, defendants in a certain adversary proceeding asked the court to seal both the docket and all papers filed in the adversary proceeding. *Id.* at 424. The movants alleged that the complaint contained certain defamatory matters which would have an adverse effect on the movant's business activities. *Id.* at 425. The bankruptcy court denied the application noting that the allegations, if proven, might show that the movant engaged in the practice of law. The *Hope* court went on to state that it was undisputed that the movant was unlicensed to practice law in Georgia, and as a result, the court was unable to see how the allegations would affect the movant's business activities. *Id.*

As we observed earlier, NCE would be an entity entitled to protection under section 107(b). 11 U.S.C. § 101(14); 11 U.S.C. § 101(33). Upon debtor's request, NCE provided debtor with a list of its customers. Unlike the *Itel* case, Schedule A in the instant case contains a list of the identities and of the addresses of the customer members of NCE. As a practical matter, NCE has no real asset except for this customer list. NCE is merely a broker that acts as a conduit for members seeking to exchange goods or services. To allow a competitor access to NCE's customer list would obviously have an adverse effect on NCE.

Of course, NCE's motion for a protective order may now be moot. During the six months within which NCE failed to file a memorandum in support of its motion, Schedule A remained available to the public for inspection. Thus, all entities with a competitive interest adverse to that of NCE may already have viewed debtor's Schedule A. NCE's failure to file its memorandum, however, is an insufficient reason to deny its motion regarding access to debtor's Schedule A in the future.

NCE asks in its proposed order that access to debtor's Schedule A be limited to those persons who have been determined by the Court, after motion and hearing, to have a legitimate interest in the information. NCE suggests that the necessity of applying to view Schedule A will, of itself, eliminate those persons with improper objectives. This may very well be the case. Thus, in consideration of the aforegoing, this Court will adopt a notice and an opportunity for hearing procedure. If no objections to the requested access are filed during the notice period, access to debtor's Schedule A will be allowed without an actual hearing. 11 U.S.C. § 102(1)(B).