21 F.3d 24
 25 Bankr.Ct.Dec. 821, Bankr. L. Rep. P 75,826,
22 Media L. Rep. 1568
 In re ORION PICTURES CORPORATION, Debtor.
VIDEO SOFTWARE DEALERS ASSOCIATION, Plaintiff-Appellant,
v.
ORION PICTURES CORP., Orion Pictures Corporation, Debtor-Appellee,
McDonald's Corporation, Defendant-Appellee.
 No. 1069, Docket 93-5095.
 United States Court of Appeals,
Second Circuit.
 Argued Feb. 8, 1994.
Decided April 13, 1994.
 
 Salvatore A. Romano, Washington, DC (Arent Fox Kintner Plotkin & Kahn, Joyce L. Bartoo, Kimberly L. Myers, James K. Stronski, of Counsel), for plaintiff-appellant.
 Blake Bell, New York City (Willkie Farr & Gallagher, Mark R. Abrams, Joseph H. Smolinsky, of Counsel), for defendant-appellees Orion Pictures Corp.
 Michael H. Barr, New York City (Sonnenschein Nath & Rosenthal, Gregory S. Karawan, of Counsel), for defendant-appellee McDonald's Corp.
 Before: PRATT, MINER, and McLAUGHLIN, Circuit Judges.
 GEORGE C. PRATT, Circuit Judge:
 
 
 1
 This appeal requires us to examine, in the context of a bankruptcy proceeding, the presumptive right of public access to court records and the boundaries of that right. Plaintiff, Video Software Dealers Association ("VSDA"), appeals from a judgment of the United States District Court for the Southern District of New York, Thomas P. Griesa, Chief Judge, that affirmed Bankruptcy Judge Burton R. Lifland's denial of its motion to modify a protective order that had sealed all documents relating to a promotional agreement between the debtor, Orion Pictures Corporation ("Orion"), and McDonald's Corporation ("McDonald's"). For the reasons set forth below, we affirm.
 
 BACKGROUND
 
 2
 Orion granted McDonald's a license to reproduce, manufacture, distribute, and sell videocassettes of three films, including the extremely popular "Dances With Wolves". Since Orion was in a Chapter 11 reorganization, the parties sought and obtained from the bankruptcy court approval to enter into the transaction. Because the parties agreed that the transaction should remain confidential, Orion moved to seal all documents filed with the court, including the licensing agreement itself. Bankruptcy Judge Lifland granted the motion under 11 U.S.C. Sec. 107(b) of the Bankruptcy Code and Bankruptcy Rule 9018.
 
 
 3
 After a news release revealed information about the Orion/McDonald's transaction, VSDA, whose members had earlier purchased from Orion approximately 500,000 videocassettes of "Dances With Wolves" at $72 per copy, $64 more per copy than McDonald's was selling them for, moved to unseal the agreement and related documents. On December 18, 1992, the bankruptcy court denied VSDA's motion, finding "that good cause exists to maintain the sealing order." The bankruptcy court noted that
 
 
 4
 [d]isclosing the sealed information, including the overall structure, terms and conditions of the McDonald's Agreement, renders very likely a direct and adverse impairment to Orion's ability to negotiate favorable promotion agreements with future customers, thereby giving Orion's competitors an unfair advantage.
 
 
 5
 In re Orion Pictures Corp., et al., No. 91 B 15635, Memorandum at 7 (Bankr.S.D.N.Y., filed Dec. 18, 1992).
 
 
 6
 VSDA appealed to the district court, arguing that the bankruptcy court had relied on conclusory allegations that were insufficient to show serious injury to Orion and McDonald's, and that commercial information must rise to the level of a trade secret before it can be protected under Sec. 107(b). The district court affirmed after concluding that: (1) Sec. 107(b)(1) of the Bankruptcy Code creates an exception to the general rule that court records are open for public examination; (2) confidential commercial information does not have to rise to the level of a trade secret in order to be protected under Sec. 107(b)(1); and (3) the bankruptcy court did not abuse its discretion by sealing the confidential materials. VSDA has appealed and we affirm. Because we have not previously been required to interpret Sec. 107(b), we write to explain our view on this problem.
 
 DISCUSSION
 
 7
 A. The Common Law Right of Access.
 
 
 8
 In this country, courts have recognized a strong presumption of public access to court records. See, e.g., Nixon v. Warner Communications Inc., 435 U.S. 589, 597-98, 98 S.Ct. 1306, 1312, 55 L.Ed.2d 570 (1978). This preference for public access is rooted in the public's first amendment right to know about the administration of justice. It helps safeguard "the integrity, quality, and respect in our judicial system", In re Analytical Sys., 83 B.R. 833, 835 (Bankr.N.D.Ga.1987), and permits the public to "keep a watchful eye on the workings of public agencies". Nixon, 435 U.S. at 598, 98 S.Ct. at 1312.
 
 
 9
 This policy of open inspection, codified generally in Sec. 107(a) of the Bankruptcy Code, evidences congress's strong desire to preserve the public's right of access to judicial records in bankruptcy proceedings. 11 U.S.C. Sec. 107(a) of the Bankruptcy Code provides
 
 
 10
 (a) Except as provided in subsection (b) of this section, a paper filed in a case under this title and the dockets of a bankruptcy court are public records and open to examination by an entity at reasonable times without charge.
 
 
 11
 11 U.S.C. Sec. 107(a) (emphasis added).
 
 
 12
 In its legislative history congress confirmed its general intent under Sec. 107(a) to keep access open to judicial records. Senate Report No. 989 states that Sec. 107(a)
 
 
 13
 makes all papers filed in a bankruptcy case and the dockets of the bankruptcy court public and open to examination at reasonable times without charge.
 
 
 14
 S.Rep. No. 989, 95th Cong., 2d Sess. 30, reprinted in 1978 U.S.C.C.A.N. 5787, 5816.
 
 
 15
 Moreover, on a purely practical level, the sealing of court records inflicts a costly nuisance on the judicial system. City of Hartford v. Chase, 942 F.2d 130, 137 (2d Cir.1991) (Pratt, J., concurring). Mechanical and logistical problems of sealing the files, finding extra space in the vault, satisfying all the handling requirements, plus the related direct and indirect costs, impose substantial burdens on the clerk's office and on a judge's staff. All these factors argue strongly for open access to court records in the bankruptcy court. Id.B. Countervailing Interests.
 
 
 16
 Although the right of public access to court records is firmly entrenched and well supported by policy and practical considerations, the right is not absolute. 2 Collier on Bankruptcy p 107.01, at 107-2 (15th ed. 1993). In limited circumstances, courts must deny access to judicial documents--generally where open inspection may be used as a vehicle for improper purposes. See, e.g., Nixon, 435 U.S. at 597, 98 S.Ct. at 1311-12 (citing to In re Caswell, 18 R.I. 835, 29 A. 259 (1893) (court can insure that its records are not used to promote public scandal through publication of disgusting details of a divorce), and Schmedding v. May, 85 Mich. 1, 48 N.W. 201, 202 (1891) (court refused to permit its records to be used as sources of business information that might harm litigant's competitive standing)).
 
 
 17
 Congress, itself, has recognized that under compelling or extraordinary circumstances, an exception to the general policy of public access is necessary. See, e.g., Fed.R.Crim.P. 6(e)(2) (secrecy of grand jury proceedings); 5 U.S.C. Sec. 552(b)(1) (provision of FOIA that exempts from disclosure material affecting the national defense); Fed.R.Civ.P. 26(c)(5)-(8) (sealing of depositions and restrictions on revealing trade secrets or other confidential information).
 
 
 18
 Section 107(b) of the Bankruptcy Code, a statutory exception to the broad principle of Sec. 107(a), also responds to this need. Derived from former Bankruptcy Rule 918, it provides in part:
 
 
 19
 (b) On request of a party in interest, the bankruptcy court shall, and on the bankruptcy court's own motion, the bankruptcy court may--
 
 
 20
 (1) protect an entity with respect to a trade secret or confidential research, development, or commercial information.
 
 
 21
 11 U.S.C. Sec. 107(b).
 
 
 22
 In most cases, a judge must carefully and skeptically review sealing requests to insure that there really is an extraordinary circumstance or compelling need. Chase, 942 F.2d at 135-36. In the bankruptcy area, however, congress has established a special rule for trade secrets and confidential research, development, and commercial information. As explained in Senate Report No. 989, Sec. 107(b) "permits the court, on its own motion, and requires the court, on the request of a party in interest, to protect trade secrets, confidential research, development, or commercial information." S.Rep. No. 989, supra, p 107.01, at 107-2. Thus, if the information fits any of the specified categories, the court is required to protect a requesting interested party and has no discretion to deny the application. 2 Collier on Bankruptcy, supra, p 107.01, at 107-2 ("Protection is mandatory when requested by an [interested party]").
 
 
 23
 C. Application To This Case.
 
 
 24
 The bankruptcy court reviewed in camera the information that Orion requested be sealed, found that it qualified as confidential commercial information, and therefore ordered the material sealed as required by the mandatory language of Sec. 107(b). The district court reviewed the bankruptcy court record and found that "there is ample support for the Bankruptcy court's findings." In re Orion Pictures Corp., 1993 WL 330065 at * 2, 1993 U.S. Dist. LEXIS 11734, at * 2 (S.D.N.Y. Aug. 25, 1993).
 
 
 25
 The district court recognized the manifest congressional intent that a paper filed in a case under Title 11 (Bankruptcy), and the dockets of the bankruptcy court, constitute public records and are open to examination by an entity at reasonable times without charge. At the same time, the district court acknowledged that "Sec. 107(b) of the Bankruptcy Code establishes the exception to the general rule that court documents are open for public inspection." Id. Under this exception, Orion, an interested party, had to show only that the information it sought to seal was "confidential" and "commercial" in nature.
 
 
 26
 Commercial information has been defined as information which would cause "an unfair advantage to competitors by providing them information as to the commercial operations of the debtor." Ad Hoc Protective Comm. for 10 1/2% Debenture Holders v. Itel Corp. (In re Itel Corp.), 17 B.R. 942, 944 (9th Cir.BAP 1982). Here, the bankruptcy court properly found, after reviewing the licensing agreement and other relevant material, that "[d]isclosing the sealed information, including the overall structure, terms and conditions of the McDonald's Agreement, renders very likely a direct and adverse impairment to Orion's ability to negotiate favorable promotion agreements * * *, thereby giving Orion's competitors an unfair advantage." In re Orion Pictures Corp., No. 91 B 15635, Memorandum at 7.
 
 
 27
 VSDA argues that the district court misinterpreted Sec. 107(b) by not invoking a principle applied in United States v. IBM Corp., 67 F.R.D. 40, 46 (S.D.N.Y.1975)--involving discovery under the Federal Rules of Civil Procedure--that confidential commercial information must rise to the level of a trade secret to be entitled to protection.
 
 
 28
 VSDA is wrong, however, because Sec. 107(b) is carefully drafted to avoid merging "trade secrets" with "confidential commercial information". By authorizing protection for trade secrets or confidential commercial information, In re Lomas Fin. Corp., No. 90-7827, 1991 WL 21231 (S.D.N.Y. Feb. 11, 1991); see also In re Epic Assocs. V., 54 B.R. 445, 449-50 (Bankr.E.D.Va.1985), the statute flatly rejects the very concept that VSDA is advancing.
 
 
 29
 Similarly, Bankruptcy Rule 9018, the procedural rule related to Sec. 107, provides that the
 
 
 30
 court may make any order which justice requires * * * to protect the estate or any entity in respect of a trade secret or other confidential research, development, or commercial information.
 
 
 31
 Bankruptcy Rule 9018 (1993) (emphasis added).
 
 
 32
 In short, this clear and unambiguous usage of "or" neither equates "trade secret" with "commercial information" nor requires the latter to reflect the same level of confidentiality as the former. Therefore, the district court properly held that courts interpreting Sec. 107(b) need not require that commercial information be the equivalent of a trade secret before protecting such information.
 
 
 33
 VSDA also claims that Orion did not show good cause for issuing the sealing order. It argues that the standard embodied in Federal Rules of Civil Procedure 26(c)(7)--that a court may issue a protective order for a trade secret or confidential commercial information, only for good cause shown--should apply in bankruptcy court, as well. According to VSDA, good cause was not shown here because the information offered to the district court was already known as a result of other similar transactions in which McDonald's had been involved. VSDA's argument lacks merit. When congress addressed the secrecy problem in Sec. 107(b) of the Bankruptcy Code it imposed no requirement to show "good cause" as a condition to sealing confidential commercial information. This omission is particularly significant because FRCP 26(c), from which the language of Sec. 107(b) appears to have been drawn, expressly required "good cause" to be established before a discovery protective order could be granted--even when the material sought to be protected was "a trade secret or other confidential research, development, or commercial information".
 
 
 34
 Finally, VSDA argues that McDonald's and Orion waived their claims of confidentiality because they had previously disclosed several of the terms in their agreement in order to rebut VSDA's claim of an antitrust violation. We see no waiver here. Disclosing a limited amount of information in opposition to the motion to unseal the agreement, information designed to rebut VSDA's allegations of misconduct, did not waive the protection of Sec. 107(b) for the other confidential commercial information contained in their agreement and motion papers. See In re Von Bulow, 828 F.2d 94, 102 (2d Cir.1987) (attorney's publication of book did not result in waiver of attorney-client privilege as to any undisclosed portions of such communications or as to any other related communications on same subject matter). None of the arguments or cases cited by VSDA undermines the broad protection in bankruptcy proceedings that Sec. 107(b) contemplates for confidential commercial information.
 
 
 35
 Affirmed.