**In re BARNEY'S, INC., et al., Debtors.**

**Bankruptcy Nos. 96 B 40113, 96 B 40133 (JLG).**

United States Bankruptcy Court, S.D. New York.

Oct. 23, 1996.

LeBoeuf, Lamb, Greene & MacRae L.L.P., New York City, for Debtors.

Hughes, Hubbard & Reed, New York City, for Isetan of America, Inc., et al.

Gibson, Dunn & Crutcher L.L.P., New York City, for Saks & Company.

Stroock & Stroock & Lavan, New York City, for Creditors' Committee.

Dow Jones & Company, Inc., Legal Department, New York City.

### MEMORANDUM DECISION ON DEBTORS' MOTION FOR A PROTECTIVE ORDER

JAMES L. GARRITY, Jr., Bankruptcy Judge.

Barney's Inc., Preen Realty, Inc. ("Preen") and several affiliates (collectively, the "debtors") are debtors in possession in this court. They have received a preliminary investment proposal (the "Preliminary Proposal Letter") from an entity ("Potential Investor") whose identity is known to them, their professionals, and a few creditors who obtained that information subject to confidentiality agreements, but which has not been acknowledged publicly. The Potential Investor advises the debtors that before it will complete its due diligence and decide whether to make a formal investment proposal, debtors must agree to pay up to $1 million of its due diligence expenses. Debtors intend to move this court pursuant to § 363(b) of the Bankruptcy Code (the "§ 363 Motion") for authorization to do so.

Debtors contend that the Proposed Investor's identity and the contents of the Preliminary Proposal Letter constitute "commercial information" under § 107(b)(1) of the Bankruptcy Code. They seek an order (1) authorizing them to file an unredacted version of the § 363 Motion and supporting papers with the clerk of the court under seal, (2) limiting service of the unredacted papers to counsel to the Official Creditors' Committee ("Committee"), Chase Manhattan Bank ("Chase"), as their post-petition lender, counsel to an unofficial committee of equipment lessors (the "Equipment Lessors") and the Office of the United States Trustee ("U.S. Trustee"), (3) authorizing and directing them to serve redacted copies of the papers on all parties that have filed notices of appearances in these cases, (4) directing the parties served with the unredacted papers to file their responsive pleadings under seal and limiting notice and service thereof to the debtors and others that were served with the unredacted documents, (5) directing all parties receiving the unredacted papers to maintain the confidentiality of those documents, and (6) authorizing them to conduct those portions of the hearing on the motion relating to the redacted information *in camera.*

Isetan of America, Inc. and Newireen Associates (collectively, "Isetan"), Saks & Company ("Saks") and Dow Jones & Company, Inc. ("Dow Jones") object to the motion. For the reasons stated herein, we deny it.

### Facts

The underlying facts are not in dispute. On January 10, 1996, debtors filed separate petitions for reorganization under chapter 11 of the Bankruptcy Code. Debtors are specialty retailers of men's and women's apparel and accessories. Pursuant to §§ 1107 and 1108 of the Bankruptcy Code, they are operating their businesses as debtors in possession. The U.S. Trustee appointed the Committee on January 22, 1996.

Debtors retained the investment banking services of the Blackstone Group, L.P. ("Blackstone"). In or about February 1996, Blackstone contacted several entities, including the Potential Investor, to solicit investment in the debtors. The Potential Investor delivered an executed confidentiality agreement to Blackstone. After that, it received confidential information regarding debtors' operations, and began a due diligence examination of the debtors' operations. In or about August 1996, the Potential Investor delivered the Preliminary Proposal Letter to debtors. With the Proposed Investor's consent, debtors supplied copies of the letter to Chase, the Committee's counsel and all Committee members except Isetan. We have not reviewed the letter. We understand that it identifies the nature and dollar amount of the potential investment, but does not discuss the information received by the Potential Investor from debtors and Blackstone under the confidentiality agreement.

Isetan asserts that it owns the real estate housing debtors' Beverly Hills, Chicago, and mid-town New York City stores, and, as such, is debtors' landlord, and Preen's largest unsecured creditor. Debtors contend that the store leases evidence Isetan's investment in debtors and that the rent payable thereunder is Isetan's return on its investment. That dispute is the subject of an adversary proceeding pending in this court.

Saks describes itself as an active and interested potential acquiror of debtors' assets and business. On or about July 23, 1996, Saks and Isetan disclosed a working agreement (the "Saks/Isetan Agreement") to investigate the feasibility of a jointly sponsored, jointly proposed or mutually supported plan of reorganization for the debtors. Although the agreement expired by its terms, Saks and Isetan continue to explore the feasibility of such a reorganization plan.

Dow Jones owns and publishes *The Wall Street Journal* (the "Journal"), a nationally distributed daily newspaper, the Dow Jones News Service, an electronic, real time wire service distributed worldwide and other print and electronic news publications and services. The Journal has covered these cases since their inception.

Debtors advise that prior to delivering the Preliminary Proposal Letter, the Potential Investor expended substantial time and money conducting due diligence and must do more before deciding whether to make a formal investment offer. They contend that the Potential Investor believes that the Saks/Isetan Agreement contains "lock up" provisions giving Saks unfair negotiating advantages with the debtors. For that reason, the investor allegedly will not complete its due diligence unless debtors agree to pay up to $1 million of those expenses. Among other things, Saks and Isetan deny that their agreement contains "lock up" provisions.

Debtors intend to reveal the Proposed Investor's identity and the contents of the Preliminary Proposal Letter in the papers they will file in support of the § 363 Motion. Debtors advise that the Proposed Investor will withdraw from the process if debtors disclose its identity and/or the terms of the Preliminary Proposal Letter to the general public.

Debtors and Dow Jones agreed for purposes of this motion that Dow Jones is a "party in interest" under § 1109(b) of the Bankruptcy Code. Debtors argued that Saks lacks standing to be heard on the motion. At the evidentiary hearing on this motion, we overruled that objection. During that hearing, and by agreement among the parties, debtors submitted two affidavits of Craig E. Barnett, a Managing Director of Blackstone, as his direct testimony in support of the motion. Isetan and Saks cross examined him. Barnett's testimony was the only evidence submitted by debtors in support of the motion. None of the objectants submitted evidence in opposition to the motion.

As filed, debtors' motion sought a protective order (1) permitting debtors to file the § 363 Motion under seal, (2) limiting notice and service of the motion papers to Chase, the Committee and United States Trustee, (3) directing those parties to file any responsive pleadings under seal and limiting notice and service thereof to debtors and one another, (4) directing that parties receiving the motion maintain the confidentiality of the motion and the information contained therein, and (5) ordering that any hearings in connection with the motion be held *in camera.*

At the evidentiary hearing, debtors agreed to serve unredacted copies of the motion papers on counsel to the Equipment Lessors and counsel agreed to keep them confidential. During that hearing, debtors argued that all aspects of the Proposed Investment Letter, including the dollar amount of the investors' due diligence expenses, are confidential. After the hearing, and after consulting the Proposed Investor, the debtors disclosed that the investor is seeking payment of up to $1 million in due diligence expenses, they agreed to serve redacted copies of the motion papers on all interested parties, and otherwise modified their motion as reflected herein. The debtors have not altered their view that the subject information is "commercial information" that must be protected from disclosure under § 107(b) of the Bankruptcy Code. Isetan, Saks and Dow Jones make several arguments in opposition to the motion. We need consider only those related to the applicability of § 107(b).

*Discussion*

Our subject matter jurisdiction of this matter is predicated on 28 U.S.C. §§ 1334(b) and 157(a) and the "Standing Order of Referral of Cases to Bankruptcy Judges" of the Unit-

ed States District Court for the Southern District of New York, dated July 10, 1984 (Ward, Acting C.J.). This is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(A) and (*O*).

■ Section 107(b) of the Bankruptcy Code states in relevant part that

[o]n request of a party in interest, the bankruptcy court shall, and on the bankruptcy court's own motion, the bankruptcy court may—

(1) protect any entity with respect to a trade secret or confidential research, development, or commercial information. . . .

11 U.S.C. § 107(b)(1); *see also* Fed.R.Bankr. Proc. 9018 (bankruptcy court may make "any order which justice requires (1) to protect the estate and any entity in respect of a trade secret or other confidential research, development, or commercial information"). Section 107(b) is an exception to the common law right of public access to court records codified generally in § 107(a) of the Bankruptcy Code.[1] *See Video Software Dealers Assn. v. Orion Pictures Corp. (In re Orion Pictures Corp.)*, 21 F.3d 24, 26 (2d Cir.1994) ("The policy of open inspection, codified generally in § 107(a) of the Bankruptcy Code, evidences congress's strong desire to preserve the public's right of access to judicial records in a bankruptcy proceeding"); *see also In re Epic Associates V*, 54 B.R. 445, 448 (Bankr.E.D.Va.1985) ("It is a highly unusual and extraordinary remedy for the court to seal records in any case because of the generally recognized rule of law that the public has a right to know"). To some extent, § 107(a)'s "directive for open access flows from the nature of the bankruptcy process—which is heavily dependent upon creditor participation, and which requires full financial disclosure of debtor's affairs." *In re Foundation For New Era Philanthropy*, No. 95–13729F, 1995 WL 478841, at *4 (Bankr. E.D.Pa. May 18, 1995). Thus, in enacting § 107(b), Congress did not intend that sealed pleadings be the rule in bankruptcy cases. *In re Nunn*, 49 B.R. 963, 964 (Bankr.E.D.Va.

1985); *Hope on Behalf of Clark v. Pearson*, 38 B.R. 423, 425 (Bankr.M.D.Ga.1984).

■ The court determines whether the subject documents fall within the provisions of § 107(b) and the appropriate protective remedy if they do. *Phar–Mor, Inc. v. Defendants Named Under Seal (In re Phar–Mor, Inc.)*, 191 B.R. 675, 679 (Bankr.N.D.Ohio 1995). Once it determines that they fit any of the specified categories in the statute, "the court is *required* to protect a requesting party and has no discretion to deny the application." *In re Orion Pictures Corp.*, 21 F.3d at 27 (emphasis original) (citing 2 *Collier on Bankruptcy*, ¶ 107.01 at p. 107–2 (15th rev. ed. 1993)); *In re Phar–Mor, Inc.*, 191 B.R. at 679 (citing *Orion*).

■ Debtors contend that we must enter a protective order because the Preliminary Proposal Letter contains commercial information of the debtors and Proposed Investor and because the Proposed Investor will withdraw from the process if its identity and/or the terms of its letter are revealed to the general public. Although debtors deny that they are for sale, Barnett speculated that if the terms of the Preliminary Proposal Letter are publicized, other investors will submit only marginally higher and better competing offers—rather than proposals reflecting their true assessment of the debtors' value—to the detriment of the debtors and their estates. *See* Transcript of September 25, 1996 Hearing on Debtors' Motion for a Protective Order (the "Trans.") 73–74; 143:5–10; 146:6–10. Debtors liken this case to *In re Lomas Financial Corp.*, No. 90 Civ. 7827, 1991 WL 21231 (S.D.N.Y. Feb. 11, 1991).

In *Lomas*, debtor sought an order pursuant to § 1121 of the Bankruptcy Code extending its exclusive right to file a plan of reorganization. The official creditors' committee opposed the motion. Prior to making that motion, debtor delivered a draft plan of reorganization to the committee pursuant to a confidentiality agreement. Among other

---

1. Section 107(a) of the Bankruptcy Code states that

Except as provided in [§ 107(b)], a paper filed in a case under this title and the dockets

of a bankruptcy court are public records and open to examination by any entity at reasonable times without charge.
11 U.S.C. § 107(a).

things, the proposed plan revealed the distributions to creditors contemplated by the debtor and the percentage allocations among the classes receiving distributions under the plan. The committee's opposition to the exclusivity motion contained some of that information. Debtor obtained a bankruptcy court order pursuant to § 107(b) directing that the committee file its response under seal. *Id.* at *2. The bankruptcy court characterized the plan as "an 'invitation to negotiate' " and found that if the overall plan distribution figures and proposed percentage allocations among certain classes were disclosed, there would be " 'potential for much disruption, possible mischief, disruption of markets, both with regard to the trading in securities, the trading in claims, which has become quite active in this case' ". *Id.* at *2–3. On appeal, the district court rejected the committee's argument that the term "commercial information" protects only information that may give a debtor's competitors an unfair advantage. *Id.* at *4. Relying on Fed. R.Civ.P. 26(c)(7), it read the term to "include information related 'to the buying and selling of securities on the open market.' " *Id.* It explained that it could reasonably find that disclosure of the information contained in the plan would enable committee members to affect the market in which they might sell their claims and have a chilling effect on negotiations, ultimately affecting the debtors' viability. *Id.* The court did hold that the bankruptcy courts' order was over broad and directed that only the four sentences in the response containing the commercial information be filed under seal. *Id.*

The debtors and the Committee have not commenced serious discussions regarding the terms of a plan (or plans) of reorganization. Debtors do not allege that disclosure of the terms of the Preliminary Proposal Letter will influence the purchase and/or sale of securities in any market. Barnett could only speculate that the public disclosure of the content of the letter will adversely impact debtors' reorganization efforts. However, the letter is not even an "invitation to negotiate" the terms of an investment in debtors, because the Potential Investor is under no obligation to make such an offer, even after debtors pay its due diligence fees. The significance of the content of the letter to these cases pales in comparison to the importance of the information at issue in *Lomas*. The potential for mischief cited in *Lomas* is absent here and the material is not "commercial information" as defined in *Lomas,* either from the perspective of the debtors or the Potential Investor. *See also In re Epic Associates V,* 54 B.R. at 448–49 (§ 107(b) order sealing documents filed of record in bankruptcy court cannot be based solely on the grounds that it may facilitate reorganization).

Debtors also argue that *In re Orion Pictures Corp.,* 21 F.3d 24, supports their motion. In that case, debtor granted McDonald's the right to reproduce, manufacture and sell videocassettes of three films for a price of $8.00 per copy. Before seeking court approval of the licensing arrangement (the "McDonald's Agreement"), debtor obtained an order of the bankruptcy court pursuant to § 107(b) authorizing it to file the agreement and related documents under seal. When the per copy pricing aspect of the deal became public, an association of videocassette dealers whose members had paid $72.00 per cassette for the same titles sought an order unsealing the record. The bankruptcy court denied the motion, stating

[d]isclosing the sealed information, including the overall structure, terms and conditions of the McDonald's Agreement renders very likely a direct and adverse impairment to Orion's ability to negotiate favorable promotion agreements with future customers, thereby giving Orion's competitors an unfair advantage.

*Id.* at 26 (quoting *In re Orion Pictures Corp., et al.,* No. 91 B 15635, Mem.Op. at p. 7 (Bankr.S.D.N.Y. Dec. 18, 1992)). On appeal, the Second Circuit Court of Appeals defined "confidential commercial information" as "information which would cause 'an unfair advantage to competitors by providing them information as to the commercial operations of the debtor.' " *Id.* (quoting *Ad Hoc Protective Comm. for 10 1/2 Debenture Holders v. Itel Corp. (In re Itel Corp.),* 17 B.R. 942, 944 (9th Cir. BAP 1982)). It found that the information at issue came within that definition and affirmed the bankruptcy court. *Id.*

*Orion* mandates that we seal documentary information filed in court that does not rise

to the level of a trade secret but that is so critical to the operations of the entity seeking the protective order that its disclosure will unfairly benefit that entity's competitors. *Id.* For retailers like the debtors, that information might include, without limitation, pricing formulae, short and long term marketing strategies and the terms of agreements with suppliers. That type of information is not at issue here. The Preliminary Proposal Letter does not reveal aspects of debtors' commercial operations and debtors' competitors will not be unfairly advantaged by the disclosure of the Potential Investor's identity or the terms of its letter. On this record, the same holds true for the Potential Investor. If the Potential Investor ultimately bids for debtors' assets, it may be outbid for them. That kind of risk exists in most bankruptcy cases because sales of debtors' assets generally are made subject to higher and better offers. In particular the Potential Investor must be prepared to assume that risk in the face of its request that debtors agree to pay up to $1 million of its due diligence expenses—without any commitment on the investor's part to make a formal investment offer.

■ The Proposed Investor's identity is not protected from disclosure by § 107(b) or otherwise, and its threat to withdraw from the proceedings if its identity is revealed does not alter our conclusion. Barnett testified that the Proposed Investor wishes to remain anonymous because it does not want to be associated with a deal it does not ultimately pursue. *See* Trans. 140–41 and 144. The Potential Investor's desire to avoid the professional embarrassment associated with the unsuccessful pursuit of a deal is no basis to grant this motion. *See In re Foundation For New Era Philanthropy,* 1995 WL 478841, at *4; *In re MorAmerica Financial Corp.,* 158 B.R. 135, 137 (Bankr.N.D.Iowa 1993); *In re Analytical Systems, Inc.,* 83 B.R. 833, 836 (Bankr.N.D.Ga.1987). Barnett guessed that another reason the Potential Investor wishes to go nameless at this time is that if the Potential Investor was "contemplating some kind of commercial activity that might require it to raise additional funds or go to the marketplace or do other corporate activities, people on the other side of the transactions might question the [P]otential [I]nvestor's ability to do these other transactions while this issue is pending." Trans. 145. That speculation does not support debtors' motion.

Debtors argue that the alleged unwillingness of Saks and Isetan to reveal the terms of the Saks/Isetan Agreement supports this motion. We disagree. Saks and Isetan are willing to make that agreement public. In any event, debtors are free to negotiate privately with interested parties. They put their talks with the Potential Investor in issue by seeking leave to pay that undisclosed entity up to $1 million in estate funds against a promise only that it will complete its due diligence.

We are not aware of any cases that support debtors' motion. Other cases in which courts granted § 107(b) protective orders are distinguishable. For example, in *In re Epic Associates V,* 54 B.R. 445, the court denied a request to vacate a protective order that kept confidential the identities of various savings institutions holding debtor's mortgages or mortgage backed securities. After an evidentiary hearing that included expert testimony, the court found continued relief under § 107(b) to be warranted because disclosure of the identity of the savings institutions would pose substantial harm to debtor's institutional creditors, non-connected financial institutions, and the public, including both innocent depositors and taxpayers. *Id.* at 450. Those extreme conditions are absent here. Likewise, in *In re Nunn,* 49 B.R. 963, the court issued a protective order limiting access to the names and addresses of debtor's customers. It reasoned that debtor's customer list was its only asset and to allow a competitor to gain access to the list would adversely affect the debtor. *Id.* at 965. Here, debtors creditors will not benefit from the disclosure of the subject information.

### Conclusion

Based on the foregoing, we deny debtors' motion.

SETTLE ORDER.