**In re GEORGETOWN STEEL COMPANY, LLC, Debtor.**

No. C/A 03–13156–W.

United States Bankruptcy Court, D. South Carolina.

Feb. 4, 2004.

---

Michael M. Beal, Columbia, SC, Robert S. Hawkins, Klett, Rooney, Lieber and Schorling, Philadelphia, PA, Robin C. Stanton, McNair Law Firm P.A. Columbia, SC, for Debtor.

Joseph F. Buzhardt, III, Mary G. Slocum, Office of the United States Trustee, Columbia, SC, for U.S. Trustee.

## ORDER

JOHN E. WAITES, Bankruptcy Judge.

THIS MATTER comes before the Court upon the motion dated December 30, 2003, as amended by the amended motion filed January 9, 2004 (together, the "Motion") of Georgetown Steel Company, LLC (the "Debtor"), for an entry of a final order sealing the record, and opposition thereto having been filed by the Office of the United States Trustee (the "UST"). Having considered the pleadings, the record of the case including the testimony provided, and the arguments of counsel, the Court makes the following findings of fact and conclusions of law.[1]

### FINDINGS OF FACT

1. On December 12, 2003, Debtor filed its Motion (the "Retention Motion") for an Order Authorizing the Debtor to Implement a Key Employee Retention Program (the "Retention Plan").[2] On December 29, 2003, the Court held a hearing on, *inter alia*, the Retention Motion (to the extent related thereto, the "Retention Hearing").

2. The Retention Motion was filed by Debtor in the public record and discloses that Debtor has identified fourteen (14) employees who are essential to the bank-

---

1. The Court notes that to the extent any of the following Findings of Fact constitute Conclusions of Law, they are adopted as such, and to the extent any Conclusions of Law constitute Findings of Fact, they are so adopted.

2. The employees referenced in the Retention Motion will be hereinafter referred to as the "Key Employees."

ruptcy reorganization (the "Key Employees") and whose services Debtor seeks to retain for the critical months of the case by providing them certain employment or success incentives in the form of Retention Fees or Success Fees. The names of the Key Employees were not listed in the Retention Motion nor were these employees' current positions or salaries. The total amount of payments was projected at $500,000 and the areas of their duties, as well as specific job functions, were disclosed in some detail. The criteria to earn Retention Fees along with their relationship to the salaries of these Key Employees and the criteria to earn Success Fees were specifically set forth in the Retention Motion. Roger Regelbrugge was identified specifically and his duties and the criteria for earning a Success Fee were detailed completely. Finally, the objectives of the Retention Plan and legal basis for the Motion were delineated. According to the Certificate of Service, the Retention Motion and Notice of Hearings were served on creditors on December 15, 2003.

3. At the Retention Hearing, Debtor moved, without previous notice to any party, for an order sealing the record of the Retention Hearing, including the transcripts and all exhibits, the stated purpose being in order to protect the business interests of Debtor and the privacy and related interests of the employees at issue. Debtor asserted certain confidential commercial information would be compromised due to the presence at the hearing of reporters from local print media and certain disgruntled former employees and local representatives of Debtor's labor union who had previously sought to sensationalize Debtor's circumstances and actions by providing interviews to the media. Certain parties—including the United States Trustee for the District of South Carolina (the "UST"), counsel for Debtor's labor

union, the United Steel Workers of America, AFL–CIO–CLC, Local Union # 7898 (the "Union"), and certain other parties—objected to Debtor's motion to seal the record. Debtor thereafter reached a settlement of this issue with the Union's counsel, which required certain additional information to be put on the public record at the Retention Hearing. After argument of counsel, and in order to accommodate parties in interest who had incurred substantial expense in order to prepare for and attend the hearing, the Court determined the hearing should proceed rather than be continued and granted Debtor's motion on an interim basis, as set forth in the Interim Order Sealing Record Regarding Hearing on Debtor's Motion to Implement a Key Employee Retention Program entered December 31, 2003 and the Order to Seal Records also entered on December 31, 2003 (together, the "Interim Order").

4. The Interim Order provides that the designated record of the Retention Hearing, including all exhibits and transcripts related to the Retention Plan, would be sealed and confidential for a limited time pending further order of the Court and required further notice and opportunity to object be provided to parties in interest and a further hearing on the Motion.

5. At the Retention Hearing Debtor introduced documentary evidence and testimony which, among other things, identified the Key Employees by name, current position and duties and the specific proposed payments to be made to each Key Employee. It is this specific information that Debtor asserts is confidential commercial information.

6. The Court held a hearing on the Motion on January 13, 2004 (the "Hearing"). At the Hearing, which hearing was open to the public, The CIT Group/Business Credit, Inc. ("CIT") and MidCoast

Industries, LLC ("MidCoast"), the secured creditors of the Debtor, indicated on the record their support of the Motion. The Official Unsecured Creditors Committee (the "Committee") also stated its support of the Motion at the Hearing. The only objection to the Motion was filed by the UST. Neither the Union, media nor other parties in interest filed any objection.

7. Mr. George White, Vice President of Human Resources for the Debtor (the "Human Resources V.P."), testified at the Hearing as set forth herein below regarding the need for certain information to remain under seal. No witnesses testified on behalf of the UST.

8. The Motion continues Debtor's request for entry of an order sealing the record of the Retention Hearing, including tapes and transcripts of the testimony, the exhibits, and sealing any portion of any order entered by this Court that contains the same information as set forth in the sealed record, tapes or exhibits from the Retention Hearing.[3]

9. Debtor argues that the information sought to be protected is confidential commercial information the disclosure of which would cause an unfair advantage to competitors by providing them with information as to the details concerning Debtor's current employees and payments to them, which might benefit a competitor that may want to "hire away" an employee. Debtor further argues that disclosure of the confidential documents and testimony would affect employee morale, and possibly expose the subject employees to harm as a result of potential resentment and retaliation by former employees.

10. The UST argues that 11 U.S.C. § 107(a)[4] declares the general rule that papers filed in a case under the Bankruptcy Code are public records and are open to examination by the public. The UST further argues that as a matter of public policy, a business availing itself of the protections of the bankruptcy system has a duty as a debtor to be forthright with financial information, particularly in a case such as this, where the sources of funding a plan of reorganization are finite, due to the non-operational status and sale/liquidation plans of the Debtor. The UST submits that Debtor's creditors have a right to know how Debtor's money is being spent, and Debtor has not met its burden of proving that the Motion meets one of the exceptions to § 107(a).

11. At the conclusion of testimony, the UST agreed that the names and individual amounts of benefits to be allocated to each Key Employee should not be publicly disclosed and that the record could remain sealed to that extent. However, the UST argued that a description of work to be performed by the Key Employees and the total amount of retention benefits to be paid by category of Retention Fees or Success Fees should be disclosed. All parties agreed that the Court's Order on the Motion shall be in the public record.

### CONCLUSIONS OF LAW

Since all parties agree that certain information that pervades the Retention Hearing should remain sealed, such as names of the Key Employees and references to specific dollar amounts, the Court will provide for the continued sealing of the record.

---

3. The information sought to be sealed had been previously produced to CIT and its counsel, MidCoast and its counsel, and the Committee, which includes the Union, and its counsel subject to a confidentiality agreement.

4. Further references to the United States Bankruptcy Code shall be by section number only.

Nevertheless, the information ultimately sought to be disclosed by the UST at the conclusion of the Hearing is set forth in this Court's Order addressing the Retention Plan. Accordingly, the only objection to the Motion herein is thus resolved. Nevertheless, the Court undertakes the following analysis.

Section 107(b) provides that the Court, on request of a party in interest, shall

> (1) protect an entity with respect to a trade secret or confidential research, development, or commercial information ... in a case under this title.

11 U.S.C. § 107(b). Rule 9018 sets forth the procedural mechanism for implementing 11 U.S.C. § 107(b), and provides that the court, on motion,

> may make any order which justice requires (1) to protect the estate or any entity in respect of a trade secret or other confidential research, development, or commercial information ... in any paper filed in a case under the Code.

Fed. R. Bankr.P. 9018.

■ While the Bankruptcy Code recognizes the general rule that court records and proceedings should be matters of public record, it also recognizes the rule that the public right to access is not absolute. *See* 11 U.S.C. § 107(a) and (b); *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 598, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978).

■ Debtor contends that the information sought to remain under seal is commercial information within the meaning of § 107(b). Commercial information is generally defined as "information which would cause an unfair advantage to competitors by providing them information as to the commercial operations of the debtor." *Video Software Dealers Assoc. v. Orion Pictures Corp. (In re Orion Pictures Corp.)*, 21 F.3d 24, 27 (2d Cir.1994) (citations omitted). The purpose behind § 107 and Rule 9018 is to protect "business entities from disclosure of information that could reasonably be expected to cause the entity commercial injury." *In re Global Crossing, Ltd.*, 295 B.R. 720, 725 (Bankr. S.D.N.Y.2003).

In the matter before the Court, testimony was provided by Human Resources V.P. Pursuant to his testimony, disclosure of this information could (a) provide competitors an advantage in their efforts to recruit the Key Employees away from the Company; (b) place the Key Employees at risk for potential repercussions as has occurred in the past; and (c) disrupt the internal equity and cause extreme disharmony among the remaining employees.

The Human Resources V.P. testified that the Company has always considered salary and benefit information confidential and proprietary in nature. This information has not historically been shared with the public or with other employees of Debtor. Salary and benefit information is maintained in locked offices and access is limited to a small number of employees. The Human Resources V.P. also testified that an individual could, by reviewing the material currently sealed, determine salary and benefit information of the Key Employees.

The Human Resources V.P. testified that the estate and its business enterprise would be irreparably harmed if the information were unsealed. The Key Employees are highly skilled, experienced, and desirable employees. Publication of the individual compensation of the Key Employees would place Debtor at a competitive disadvantage in retaining such employees. If such information is disclosed, Debtor's competitors would be provided with all the information necessary to recruit such employees. The Human Re-

sources V.P. testified that four or five Key Employees have already been approached by other employers.

The information Debtor seeks to remain under seal includes identification of Debtor's Key Employees (as defined in the Retention Motion) and their related compensation, both now and during the pendency of this bankruptcy case. Specifically, the information that Debtor seeks to protect is the list of the proposed Key Employees, their current positions and proposed payments under the Retention Plan to individual Key Employees, and potential termination dates of such Key Employees. Debtor thus seeks a final order to seal the record of the Retention Hearing, including all testimony or exhibits, to the extent related to the relevant portions of Debtor's Retention Plan.

■ Testimony also elicited that the departure of the Key Employees could severely undermine Debtor's efforts to maximize value for creditors, including collection of accounts receivable or asset sales and/or finding a buyer to restart Debtor's operations. If the information is made public, Debtor will be placed at a further competitive disadvantage in retaining Key Employees needed to meet administrative requirements associated with the bankruptcy case and to provide necessary information and transition to attract buyers to Debtor's assets. Finally, such disclosure would subject the Key Employees to the possibility of serious repercussions. Consideration of the effects of disclosure of such purported confidential commercial information is relevant pursuant to 11 U.S.C. § 107(b). *See In re EPIC Associates V*, 54 B.R. 445 (Bankr.E.D.Va.1985) (sealing certain financial information to prevent damage to financial institutions and depositors); *In re Nunn*, 49 B.R. 963, 965 (Bankr.E.D.Va.1985) (protecting cus-

tomer list because disclosure of list would adversely affect the creditor at issue.).

The Human Resources V.P. also testified that the safety of the Key Employees may be compromised by disclosure of certain information. Debtor is located in Georgetown, South Carolina, which is a small and close-knit community where many of the Key Employees and former employees know one another. The Human Resources V.P. testified that repercussions from disclosure of certain information could threaten the Key Employees. Uncontradicted evidence was presented that there have been acts of retaliation and violence involving Key Employees prior to and since the bankruptcy filing. Post-petition, two employees had tires slashed and one employee had the lug nuts loosened on the wheel of his automobile, potentially causing a serious accident. Such incidents are consistent with the history of acts of retaliation and vandalism taken by certain employees during and following a 1997 strike of Debtor's Union employees. At that time, picketing workers vandalized vehicles and damaged tires of supervisors and employees that crossed picket lines. Further, Debtor was subjected to a bomb threat from picketing employees, which resulted in two arrests and the Charleston bomb squad being deployed to Georgetown to disarm what turned out to be a box designed to resemble a bomb. Based on past experience, repercussions to Debtor's remaining employees appear to be a real threat, not just a remote possibility.

■ In light of the general policy that court records and proceedings should be public, the Court prefers full disclosure. Nevertheless, the testimony presented was sufficient to demonstrate that certain information is confidential commercial information within the meaning of § 107(b). Further, the undisputed evidence that raises safety concerns bolsters Debtor's

argument. While potential harm to individuals is not one of the delineated factors under § 107(b), all parties agreed that the safety of the Key Employees is something that should be considered based on the facts and circumstances of this case. In this case, the creditors of the estate, including the Union, as well as the UST have been provided with detailed information concerning the use of estate monies both with respect to the Retention Motion and Debtor's monthly expenditures. Further, as previously noted, the only objecting party, the UST, agreed on the record of the hearing that the individual names of and individual benefit allocations to the Key Employees need not be disclosed. Accordingly, the Court concludes that specific amounts proposed to be paid to individual Key Employees and the names of the Key Employees fall within the category of confidential commercial information.

■ The UST conceded that an explanation of the Key Employees' duties as well as disclosure of the total amounts allocated to each category of the Retention Plan would be sufficient.[5] Debtor has already disclosed in detail in its Retention Motion, on public record, the duties to be performed by the Key Employees, and estimated the total amount of monies to be paid pursuant to the Retention Plan. The Court sees no prejudice to any party in disclosing the amounts to be allocated pursuant to the categories of the Retention Plan: the Success Fee and the Retention

Fee. The remaining information that the Court does not deem confidential commercial information nor necessary to remain under seal has been incorporated into the Court's Order addressing Debtor's Retention Plan entered contemporaneously herewith in the public record.[6] In this way, the Court believes it is satisfying the remaining objection of the UST.

Based on the foregoing, the application of 11 U.S.C. § 107(b) and Rule 9018 are warranted in the limited respect provided herein.[7] Much of the relevant information contained in the record and in those documents presented at the hearing has been incorporated into the Court's Order addressing Debtor's Retention Plan. Nevertheless, the Court grants Debtor's Motion inasmuch as Debtor and the UST agreed that there was no need to publish the specific names or individual retention benefits of the Key Employees. Given the administrative burden on the Court if it were to attempt to parse through the record and exhibits and seal or redact only that which is necessary to seal, and finding it consistent with the parties' positions stated at the conclusion of the hearing, the Court will instead Order the record remain sealed and will disclose all pertinent information with certain limited exceptions, as set forth herein, in its Order addressing Debtor's Retention Plan. The Court further provides that a party in interest may seek the unsealing of the record as to it by separate motion to be filed within twenty

5. Although the UST objected to the Motion herein, the UST affirmatively supported the entry of an Order approving Debtor's Retention Plan.

6. The Court notes that whether Debtor is currently operating as a steel mill does not appear relevant to its consideration pursuant to § 107(b).

7. The UST's argument that the District Court Local Rule 5.03 mandates the procedures in

this case is incorrect. First, the District Court has authorized this Court to make its own rules of practice and procedure and therefore District Court Local Rule 5.03 is not controlling. Second, District Court Local Rule 5.03 is only applicable absent a requirement to seal in a governing rule, statute, or order. Section 107 and Bankruptcy Rule 9018 govern the matter before the Court making District Court Local Rule 5.03 by its own terms inapplicable.

(20) days of the entry of this Order. Such a motion shall identify the basis for relief and movant's need for access as well as movant's proposed use for the information contained in the record.

THEREFORE, IT IS HEREBY ORDERED, that the Motion is granted based upon the terms and conditions provided in the Interim Order; and it is further

ORDERED, that the Interim Order shall become a final order.

**AND IT IS SO ORDERED.**

### JUDGMENT

Based upon the Findings of Fact and Conclusions of Law as recited in the attached Order of the Court, Debtor's motion dated December 30, 2003, as amended by the amended motion filed January 9, 2004, for an entry of a final order sealing the record, is granted and the Interim Order Sealing Record Regarding Hearing on Debtor's Motion to Implement a Key Employee Retention Program entered December 31, 2003 and the Order to Seal Records also entered on December 31, 2003, (referred to collectively in the attached Order as the "Interim Order") shall become a final order.