**In re FARMLAND INDUSTRIES, INC., et al., Debtors.**

**No. 02–50557–JWV.**

United States Bankruptcy Court, W.D. Missouri.

Feb. 14, 2003.

Paula C. Acconcia, Jerry L. Phillips, Office of the U.S. Trustee, Kansas City, MO, U.S. Trustee.

Christopher A. Artzer, Akin, Gump, Strauss, Hauer & Feld, Houston, TX, Gary D. Barnes, Marcus Alan Helt, Christopher J. Redmond, Husch & Eppenberger, Kansas City, MO, James E. Bird, Daniel J. Flanigan, Polsinelli, Shalton & Welte, P.C., Kansas City, MO, Henry J. Kaim, Houston, TX, Jonathan A. Margolies, McDowell, Rice, Smith & Gaar, Kansas City, MO, William J. McKenna, Kathleen R. Pasulka–Brown, Mark L. Prager, Michael J. Small, Foley & Lardner, Chicago, IL, Clifton K. Molatore, O'Melveny & Myers, Los Angeles, CA, S. Margie Venus, Houston, TX, for creditors.

Laurence M. Frazen, Cynthia Dillard Parres, Bryan, Cave LLP, Michael D. Hockley, Spencer, Fane, Britt & Browne, Kansas City, MO, for debtor.

Erlene W. Krigel, Krigel & Krigel, P.C., Kansas City, MO, for Debt Acquisition Company of America VI, LLC.

## *MEMORANDUM ORDER*

JERRY W. VENTERS, Bankruptcy Judge.

The Court takes up for consideration and ruling at this time the Debtors' Motion for Leave to File First Amendment to DIP Credit Agreement Under Seal (Document # 1999), the Official Committee of Bondholders' Motion to File Certain Provisions of Bondholders' Objections to Debtors' Motion for Order Authorizing First Amendment to DIP Credit Agreement Under Seal Pursuant to 11 U.S.C. § 107 and FRBP 9018 (Document # 2212), and the Debtors' Motion for Approval of Procedures for *In Camera* Hearing of Matters Related to First Amendment to DIP Credit Agreement and Filing of Papers Under Seal (Document # 2268) (collectively, "the Motions").

The Court held a hearing on the Motions on February 11, 2003, at which time counsel for various parties presented oral arguments, though no evidence was adduced. Numerous Objections were filed to the Debtors' Motions, but counsel for the Debtors, Farmland Industries, Inc., et al.,

("Farmland" or "Debtors") advised the Court that all objections had been resolved and were withdrawn except the Objection filed by Debt Acquisition Company of America VI, L.L.C. ("DACA"). Deutsche Bank Trust Company Americas ("Deutsche Bank"), as agent for the pre-petition and DIP Lenders, filed a Response.

## FACTUAL BACKGROUND

The Debtors filed their voluntary Chapter 11 petitions on May 31, 2002, and have continued to operate their businesses. Just prior to filing bankruptcy, the Debtors entered into a DIP Credit Agreement with a group of pre-petition lenders whose agent is Deutsche Bank. On July 2, 2002, this Court entered its Final Order approving the DIP Credit Agreement. Then, on January 14, 2003, the Debtors filed their Motion for Order Authorizing First Amendment to DIP Credit Agreement (Document # 2000; "First Amendment Motion"), which has given rise to the Motions encompassed by this Order and the present dispute.

In their First Amendment Motion, the Debtors have detailed several of the provisions contained in the First Amendment to the DIP Credit Agreement, for which Court approval is being sought. For example, the First Amendment Motion spells out certain reductions that must be made in the DIP loans, the payment by the Debtors of default interest on the loans, and the payment by the Debtors of an "amendment fee" to Deutsche Bank in the amount of $691,300. However, the Debtors did not attach a copy of the First Amendment to their First Amendment Motion; instead, they filed a Motion requesting the Court's approval to file the First Amendment under seal, pursuant to 11 U.S.C. § 107(b). In particular, the Debtors wish to avoid public disclosure of timelines in the First Amendment which require the sale of certain of the Debtors' assets by specified dates. Such information, the Debtors contend, is "sensitive, confidential and not appropriate for public dissemination," and its disclosure would "negatively impact the value which may ultimately be realized for the business interests, in turn adversely affecting the value received by creditors of the estate."

After the close of an omnibus hearing on January 28, 2003, the Court set a hearing on the First Amendment Motion for February 20, 2003. Three days later, the Debtors filed their Motion (# 2268) asking the Court to conduct that hearing *in camera*, closing the hearing and all documents and papers introduced in the hearing to all but a few "necessary parties," primarily the Debtors, the Court-approved Committees, the DIP Lenders, and the United States Trustee and their attorneys and retained professionals (the "Necessary Parties"). As in the earlier Motion, the Debtors again asserted that disclosure of the timelines by which the Debtors would be required to market and sell certain assets would "severely compromise" the Debtors' ability to obtain "true going-concern value" for the assets. They further assert that public disclosure and testimony concerning the Debtors' financial liquidity would have a deleterious effect on their reorganization and on the sale of assets.

The Debtors are supported in their request by the DIP Lenders, the Official Committee of Unsecured Creditors ("Creditors' Committee"), and the Official Committee of Bondholders ("Bondholders Committee"), and in part by the United States Trustee.

The Debtors' requests to file the First Amendment under seal and to conduct the February 20 hearing on the First Amendment *in camera* are opposed—and opposed vigorously—by DACA. DACA is an

indirect wholly-owned subsidiary of Smithfield Foods, Inc., a large pork producer that has made no secret of its desire to purchase the Debtors' pork and beef businesses (either one or both).[1] DACA has established itself as a creditor in these Chapter 11 proceedings by purchasing the unsecured claim of another creditor in the amount of approximately $13,000. Principally, DACA argues that placing the First Amendment under seal and conducting the February 20 hearing *in camera* violate basic public policy that all bankruptcy proceedings and records are to be open to the public, and that the requests are contrary to the Bankruptcy Code and Rules. It also argues that the information sought to be protected is not "commercial information" as intended by 11 U.S.C. § 107(b). Finally, DACA asserts that requiring public disclosure of the assets that must be sold as a condition of continued DIP financing and the deadlines by which those assets must be marketed and sold would not be detrimental to the Debtors, would possibly facilitate the sale of assets and result in higher prices (rather than lower prices) being obtained for the assets, and is necessary to level the playing field for all potential buyers of those assets.

## DISCUSSION

The public policy favoring openness in bankruptcy proceedings is clearly set out and established in 11 U.S.C. § 107(a), which provides:

(a) Except as provided in subsection (b) of this section, a paper filed in a case under this title and the dockets of a bankruptcy court are public records and open to examination by an entity at reasonable times without charge.

11 U.S.C. § 107(a).

■ As the Second Circuit Court of Appeals stated in *Video Software Dealers Association v. Orion Pictures Corp. (In re Orion Pictures Corporation)*, 21 F.3d 24 (2nd Cir.1994):

In this country, courts have recognized a strong presumption of public access to court records. *Nixon v. Warner Communications Inc.*, 435 U.S. 589, 597–98, 98 S.Ct. 1306, 1312, 55 L.Ed.2d 570 (1978). This preference for public access is rooted in the public's first amendment right to know about the administration of justice. It helps safeguard 'the integrity, quality, and respect in our judicial system,' *In re Analytical Sys.*, 83 B.R. 833, 835 (Bankr.N.D.Ga.1987), and permits the public to 'keep a watchful eye on the workings of public agencies'. *Nixon*, 435 U.S. at 598, 98 S.Ct. at 1312. This policy of open inspection, codified generally in § 107(a) of the Bankruptcy Code, evidences Congress' strong desire to preserve the public's right of access to judicial records in bankruptcy proceedings.

*Orion* at 21 F.3d 26.

■ Likewise, this Court recognizes that public access to trials is woven deep in the fabric of the American system of government and the heritage of the United States. Every school child in this country is taught that the courts are open to the public, and this Court recognizes that the papers and processes of the courts should be closed from public view only in very limited and exceptional circumstances.

---

1. In its Objection, DACA acknowledges that its affiliate, Smithfield, has "an avowed interest in buying certain of Debtors' assets..." ¶ 25, DACA Objections. DACA details, in paragraphs 34–37 of its Objections, at least some of the efforts that have been undertaken by Smithfield, both pre-petition and post-petition, to purchase the Debtors' assets. There is little question that DACA is merely a facade for Smithfield, and that their interests in these proceedings are as potential buyers, not creditors.

■ However, having said that, we must also recognize, as Congress and the writers of the Federal Rules of Bankruptcy Procedure have, that there are times and circumstances when otherwise public documents should be kept from public view and otherwise public hearings should be closed to the public. Section 107(b) of the Bankruptcy Code provides:

> (b) On request of a party in interest, the bankruptcy court *shall*, and on the bankruptcy court's own motion, the bankruptcy court may—
>
> (1) *protect an entity* with respect to a trade secret or confidential research, development, or commercial information; or
>
> (2) protect a person with respect to scandalous or defamatory matter contained in a paper filed in a case under this title.

11 U.S.C. § 107(b). (emphasis added)

Furthermore, Rule 9018, Fed.R.Bankr. P., provides:

> On motion or on its own initiative, with or without notice, the court may make any order which justice requires (1) *to protect the estate* or any entity in respect of a trade secret or other confidential research, development, or commercial information...

Rule 9018, Fed.R.Bankr.P. (emphasis added)

According to the Second Circuit, once it is established that the information sought to be protected fits in any of the categories or definitions in § 107(b), "the court is *required* to protect a requesting interested party and has no discretion to deny the application." *Orion,* 21 F.3d at 27, citing 2 *Collier on Bankruptcy,* ¶ 107.01, at 107–2 (15th ed. 1993) ("Protection is mandatory when requested by an [interested party]"). (emphasis in original) This conclusion is based on the fact that Congress used the mandatory word *shall* in the statute, and is supported by the legislative history. *Orion,* at p. 26. See also *In re Frontier Group, LLC,* 256 B.R. 771, 773 (Bankr. E.D.Tenn.2000).

■ The Court has carefully examined the First Amendment to the DIP Credit Agreement, which has been provided to the Court along with the Debtors' Motion to place that document under seal, and agrees with the Debtors that it contains commercial information that merits protection in this instance. As the *Orion* Court noted, and as DACA acknowledges, it is well-settled that, for purposes of § 107(b), "commercial information" is "information which would cause an unfair advantage to competitors by providing them with information as to the commercial operations of the debtor." *Orion,* 21 F.3d at 27, quoting *Ad Hoc Protective Comm. for 10½% Debenture Holders v. Itel Corp. (In re Itel Corp.),* 17 B.R. 942, 944 (9th Cir. BAP 1982). Though acknowledging that this is the law, DACA nonetheless argues that timelines for the marketing and sale of the Debtors' assets do not relate to the Debtors' *business operations,* but rather "are about a sale process, which, in fact, contemplates the discontinuance of certain operations." This distinction is strained and incorrect. The operation of a business—particularly one as far-reaching as the $11 billion businesses of the Debtors—clearly involves the buying and selling of various aspects of the business on a regular (albeit perhaps infrequent) basis. The sale of certain assets and the retention of other assets is obviously a part of a conglomerate's business operations. For a retailer like the Debtors here, "confidential commercial information" may include short and long term marketing strategies. *In re Barney's Inc.,* 201 B.R. 703, 708–09 (Bankr.S.D.N.Y.1996) (stating that "*Orion* mandates that we seal documentary infor-

mation filed in court that does not rise to the level of a trade secret but that is so critical to the operation of the entity seeking the protective order that its disclosure will unfairly benefit that entity's competitors.")

■ The Court is convinced that disclosing to the public—and thereby to potential buyers of the Debtors' assets—the dates by which the Debtors' DIP Lenders are requiring that certain assets be marketed and sold, as a condition of obtaining continued DIP financing, would be potentially detrimental to the ongoing operations of the Debtors, would unfairly benefit the Debtors' competitors by providing them with critical, strategic marketing information, and would most likely have a serious and detrimental impact on the prices for which those assets could be sold. If a potential buyer has knowledge of a deadline, in effect, by which the Debtors must sell a certain asset, that knowledge gives the potential buyer great leverage over the Debtors and places the Debtors at a distinct disadvantage in the sales bargaining and negotiating process. Clearly, this is "commercial information" that merits protection.

Similarly, the disclosure of information concerning the Debtors' liquidity—or lack of liquidity—would place the Debtors at a serious disadvantage in the marketing and sale of their assets. Once again, knowledge of liquidity problems in the hands of potential buyers of the Debtors' assets would give those potential buyers substantial leverage over the Debtors. A cash-strapped seller, particularly a cash-strapped seller in bankruptcy, is placed at great disadvantage in the negotiating process. It may well be a desperate seller, and knowledge of that fact would, in the Court's view, have the effect of driving down the amounts that potential buyers might offer for the Debtors' assets. How-

ever, if the potential buyers have no particularized knowledge concerning the Debtors' liquidity, no advantage is gained.

■ The paramount goal in the sale of assets in a bankruptcy proceeding is to obtain the best price possible for the ultimate benefit of the unsecured creditors of the bankruptcy estate. Disclosure of the information discussed hereinabove would not further that goal; rather, it would hinder and defeat that goal. An Order prohibiting these disclosures is necessary to protect the bankruptcy estate, as authorized by Bankruptcy Rule 9018.

For the foregoing reasons, the Court will place under seal that portion of the First Amendment that contains timelines for the required marketing and sale of the Debtors' assets, so as to protect the Debtors and the bankruptcy estate, as mandated by § 107(b). Inasmuch as the Debtors have, in their First Amendment Motion, disclosed the other salient provisions of the First Amendment, it would be inappropriate to place the entire document under seal. Moreover, the disclosure of other terms of the First Amendment should not be harmful to the Debtors, and would be in keeping with the public policy of open records in the bankruptcy courts. The Court will also grant the request of the Bondholders Committee that its Objections to the First Amendment Motion be placed under seal, so as to guard against inadvertent disclosure of the protected information.

Furthermore, for the reasons stated, the Court will close to all but the Necessary Parties (as defined in the Debtors' Motion) those portions of the February 20 hearing that relate to the timelines for the marketing and sale of the Debtors' assets and to the Debtors' monetary liquidity. Testimony on those specific subjects and documentary evidence and materials on those specific subjects will be withheld un-

til all other aspects of the hearing have been completed, at which time the courtroom will be closed to all but the Necessary Parties and Court staff and evidence will be adduced on those specific subjects. The Court will require the cooperation and assistance of all parties and counsel to comply with these rulings.

The Court will reserve ruling on Deutsche Bank's Response, and the relief requested therein, until the hearing on February 20.

Therefore, it is

**ORDERED** that the Debtors' Motion for Leave to File First Amendment to DIP Credit Agreement Under Seal (Document # 1999), the Official Committee of Bondholders' Motion to File Certain Provisions of Bondholders' Objections to Debtors' Motion for Order Authorizing First Amendment to DIP Credit Agreement Under Seal Pursuant to 11 U.S.C. § 107 and FRBP 9018 (Document # 2212), and the Debtors' Motion for Approval of Procedures for *In Camera* Hearing of Matters Related to First Amendment to DIP Credit Agreement and Filing of Papers Under Seal (Document # 2268) be and are hereby granted, subject to the limitations and provisions set out hereinabove. It is

**FURTHER ORDERED** that the Objections to the Debtors' Motions filed by Debt Acquisition Company of America VI, L.L.C., be and are hereby overruled, subject to the limitations and provisions set out hereinabove.