**In re GLOBAL CROSSING LTD., et al., Debtors.**

**No. 02–40188 (REG).**

United States Bankruptcy Court, S.D. New York.

July 24, 2003.

Weil, Gotshal & Manges, LLP, by Michael F. Walsh, Esq., Joseph S. Allerhand, Esq., Paul M. Basta, Esq., Anthony J. Albanese, Esq., New York City, for the Debtors.

Brown, Rudnick, Berlack, Israels, LLP, by Edward S. Weisfelner, Esq., Joseph F. Ryan, Esq., New York City, for the Official Committee of Unsecured Creditors.

Greenberg Traurig, LLP, by Thomas J. Weber, Esq., New York City, for the Special Conflicts Official Committee of Unsecured Creditors.

Milbank, Tweed, Hadley & McCloy, LLP, by Alan S. Brilliant, Esq., George S. Canellos, Esq., Thomas A. Arena, Esq., and Deirdre Ann Sullivan, Esq., New York City, for JP Morgan Chase Bank, in its capacity as Administrative Agent for the Senior Secured Lenders.

Kirkland & Ellis, by Marc Kieselstein, Esq., Scott R. Samay, Esq., New York City, for XO Communications, Inc.

McDermott, Will & Emery, by David C. Albalah, Esq., New York City, for IDT Corporation.

Nancy L. Gillespie, Esq., Assistant General Counsel, New York City, for Dow Jones & Company.

Thomas S. Kim, Esq., Senior Legal Counsel, New York City, for Reuters America Inc.

## DECISION ON REQUEST FOR *IN CAMERA* TREATMENT OF EVIDENCE RELATING TO PROCEEDINGS BEFORE COMMITTEE ON FOREIGN INVESTMENT IN THE UNITED STATES [1]

ROBERT E. GERBER, Bankruptcy Judge.

In this contested matter in a case under chapter 11 of the Bankruptcy Code (the "Code"), raising a preliminary issue with respect to the conduct of the evidentiary

1. This written decision memorializes the ruling announced orally at the conclusion of the hearing on this motion on June 25, 2003.

hearing on a related motion,[2] Global Crossing Ltd. and its subsidiaries (together, the "Debtors" or "Global Crossing") move for authorization from this Court, pursuant to sections 105(a) and 107(b) of the Code, and Fed. R. Bankr.P. 9018:

(1) to hear evidence relating to proceedings before the Committee of Foreign Investment in the United States ("CFIUS") *in camera*,[3] and

(2) to exclude representatives of XO Communications, Inc. ("XO") and IDT Corporation ("IDT") from participation in such *in camera* hearing.

The Debtors' motion is opposed by XO and IDT, and by the news organizations Reuters America Inc. ("Reuters"), and the Wall Street Journal, published by Dow Jones & Company ("Dow Jones").

Both prongs of the motion are granted, by reason of the national security nature of the information in question, and to avoid commercial damage to Global Crossing and to those of its creditors who have a stake in maximizing the estate's distributions. While the starting point for the analysis is Fed. R. Bankr.P. 5001(b), which provides, as noted below, that hearings shall be conducted in open court, Fed. R. Bankr.P. 5001(b) is trumped, when circumstances warrant, by Fed. R. Bankr.P. 9018. The Court believes, and holds, that this is a classic case for application of Fed. R. Bankr.P. 9018(a); it believes that the interests of our country and of the Debtors could be jeopardized by hearing the CFIUS testimony in public, or by providing XO and IDT with access to it, and the Court will not permit it—though the Court agrees with many of the points made by the Wall Street Journal, and would bend over backwards to conduct all other aspects of this hearing in public.

*Background*

As appears to be undisputed, CFIUS is charged with reviewing the national security implications of particular transactions. Its members, which consist of the Secretary of the Treasury and an additional eleven other executive branch members—including, among others, the Secretary of State, the Secretary of Defense, the Secretary of Homeland Security and the President's National Security Advisor—examine the proposed transaction from the perspective of their area of competence within the government. Given the national security-related nature of the CFIUS review process, it is generally protected from disclosure to the public, subject to exceptions in the regulations which the Court will discuss momentarily.

The Debtors have made a showing that each of XO and IDT has expressed an interest in acquiring the Debtors or their assets, and would have an interest in CFIUS denying approval of the now pending transaction with Singapore Technologies Telemedia Pte Ltd. ("STT").[4] The Debtors assert that XO has aggressively lobbied Congress and sought to delay and derail regulatory and CFIUS approval of the STT transaction. XO, in its objection to this motion, has not denied an interest in getting CFIUS to disapprove, or that it

---

**2.** That motion is the Debtors' Motion for Authority to Amend Purchase Agreement, for Authority to Grant Releases, and for Extension of Exclusivity ("Purchase Agreement Amendment Motion"), addressed in this Court's decision in *In re Global Crossing Ltd.,* 295 B.R. 726, 2003 WL 21728842 (Bankr. S.D.N.Y.2003) (*"Purchase Agreement Decision "*).

**3.** The motion was clarified in oral argument to make it clear that the issue before the Court solely relates to the testimony of one of the several witnesses, Stuart Eizenstat.

**4.** For the full context, *see Purchase Agreement Decision,* 295 B.R. at 732, 2003 WL 21728842.

would use the information it would secure in this hearing to lobby governmental agencies against the STT transaction. But it says "XO would merely be exercising its Constitutional rights."[5]

Without necessarily endorsing every adjective or adverb used by the Debtors in characterizing XO's motives and conduct, the Court finds that the Debtors' stated concerns are generally well taken, and it appears, and the Court finds, that as a competing bidder, XO would benefit as a bidder from the disapproval by CFIUS far more than it would benefit as a creditor by approval, and, as a consequence, that XO has an interest in derailing the requested CFIUS approval if it can. XO has not denied that if it could secure information damaging to the STT transaction in this hearing, it would use that information to derail the STT transaction. The Court cannot rule out the same conclusion with respect to IDT.

While no showing has been made that such information actually would be presented at the hearing, the Court believes it to be likely, if not certain, that disclosure would nevertheless telegraph present national security concerns of United States Government officials, and means under consideration to address them. Additionally, and even more clearly, the information could reasonably be expected to be used to derail the STT transaction, which would be damaging to all of the Debtors' creditors who are not bidders for the Debtors' assets—which means, of course, all of the Debtors' thousands of creditors

other than XO and IDT. The Debtors contend that XO and IDT would exploit any information they could gather from hearing CFIUS-related testimony to interfere with the regulatory approval process to the detriment of the Debtors, their estates, and all parties in interest. While that necessarily involves a prediction as to the future, the Court can and does find that it is highly likely, if not certain, that at least XO would do that, and that is both reasonable and essential to protect the Debtors' estates from that risk.

The Debtors are not asking the Court to hold the entirety of the hearing on the Purchase Agreement Amendment Motion *in camera,* or to exclude XO, IDT and the press from all of it, but rather only those parts dealing with communications with CFIUS.

### Discussion

Bankruptcy Code section 107(a) provides for a general rule in favor of disclosure of papers and docket entries in bankruptcy proceedings,[6] but Bankruptcy Code section 107(b) goes on to state, in relevant part:

> (b) On request of a party in interest, the bankruptcy court shall, and on the bankruptcy court's own motion, the bankruptcy court may—
>
> > (1) protect an entity with respect to a trade secret or confidential research, development, or commercial information . . . .

11 U.S.C. § 107(b).[7]

Likewise, Fed. R. Bankr.P. 5001(b) provides, in relevant part, that "[a]ll trials and

---

**5.** Obj. of XO at 2 (ECF # 3277).

**6.** It provides:

> (a) Except as provided in subsection (b) of this section, a paper filed in a case under this title and the dockets of a bankruptcy court are public records and open to examination by an entity at reasonable times without charge.

11 U.S.C. § 107(a).

**7.** As is apparent from the statutory language, and its use of the words "shall" and "may," respectively, this Court is required to grant that relief upon the motion of a party in interest, assuming the information is of the type listed in section 107(b), *see Video Software Dealers Ass'n v. Orion Pictures Corp. (In*

hearings shall be conducted in open court and so far as convenient in a regular court room." But Fed. R. Bankr.P. 9018 provides:

> On motion or on its own initiative, with or without notice, the court may make any order which justice requires (1) to protect the estate or any entity in respect of a trade secret or other confidential research, development, or commercial information, (2) to protect any entity against scandalous or defamatory matter contained in any paper filed in a case under the Code, or (3) to protect governmental matters that are made confidential by statute or regulation.

Fed. R. Bankr.P. 9018.

■■■ The only objector addressing the point (IDT) seemingly recognizes, and in any event the Court holds, that in appropriate cases, Fed. R. Bankr.P. 9018 trumps Fed. R. Bankr.P. 5001(b). The construction of rules, like the construction of statutes, is a holistic endeavor, and the two rules must be read together to give Fed. R. Bankr.P. 9018 meaning; to do otherwise would deprive Fed. R. Bankr.P. 9018 of its intended effect.

■■ When the requirements of Rule 9018 are satisfied, the authority to issue the resulting order is broad—"any order which justice requires." The Court notes that the authority goes not just to the protection of confidential documents, but to other confidentiality restrictions that are warranted in the interests of justice.

The leading treatise in the area, *Collier on Bankruptcy,* supports this view as well. It provides, in its section on Fed. R. Bankr.P. 5001(b):

*In camera* proceedings may encompass trials, hearings, portions of trials or hearings, as well as general matters. They may take place in chambers or in the courtroom, with spectators excluded. 9 Alan Resnick, *Collier on Bankruptcy* ¶ 5001.03[2], at page 5001–6 (15th ed. Rev.2003) (*"Collier"*). *Collier* goes on to set forth standards to apply in utilizing the power; it continues:

> Hearings styled *in camera* are generally more formal proceedings than chambers conferences and are held to protect a particular interest, i.e., to protect a trade secret, preserve confidentiality, protect the safety of a witness or obviate disorderly conduct. Proceedings should be held *in camera* only to the extent required to protect the particular interest. For a hearing to be held *in camera,* the party seeking protection should demonstrate good cause by evidencing that disclosure will result in a clearly defined, serious injury.

*Id.* at pgs. 5001–6 to 5001–7. For the last point, *Collier* cites Judge Edelstein's decision in the IBM antitrust case, which also informs the Court's decision in this regard. *See United States v. Int'l Bus. Machines Corp.,* 67 F.R.D. 40, 46 (S.D.N.Y.1975). The letter and spirit of the quoted passage from *Collier* support the Debtors' position that hearings can be held *in camera* to address concerns of the type here, and support the Wall Street Journal's point that if the Court needs to restrict access to testimony, it should do as narrowly as possible.

■■ Under the relevant statute, Title VII of the Defense Production Act of 1950 § 721, as amended,[8] 50 U.S.C.App. § 2158,

*re Orion Pictures Corp.),* 21 F.3d 24, 27 (2d Cir.1994), and the Court is permitted to do it, on its own motion, in the exercise of sound discretion.

**8.** Section 721 of Title VII of the Defense Production Act of 1950 was amended by section 5021 of the Omnibus Trade and Competitiveness Act of 1988, relating to mergers, acquisitions, and takeovers of U.S. persons by or

*et seq.*, and the related regulations, *see* 31 C.F.R. § 800.701, *et seq.*, information or documentary material filed with CFIUS is confidential, subject to limited exceptions; it is exempt from disclosure under the Freedom of Information Act, and:

> no such information or documentary material may be made public, except as may be relevant to any administrative or judicial action or proceeding.

31 C.F.R. § 800.702. The regulations go on to say that "Nothing in section 721 shall be construed to prevent disclosure to either House of Congress or to any duly authorized committee or subcommittee of the Congress." *Id.*

While plainly the regulations seem to suggest that a court of competent jurisdiction, which presumably would include this Court, could require disclosure of such information, and it might be (as IDT argues) that the regulations reach only documents *filed* with CFIUS and do not, by their terms, cover things verbally said by or to CFIUS or its agents, there is nevertheless a clearly articulated intention, on the part of each of the legislative and executive branches of our government, that the CFIUS process remain confidential. The Federal Rules of Bankruptcy Procedure expressly authorize bankruptcy judges to protect governmental matters "that are made confidential by statute or regulation." Fed. R. Bankr.P. 9018(3).

■ Even more clearly, the Court believes that even if national security information were not involved, or if disclosure of it were not expressly prohibited or were permitted under a relevant exception, this Court would still be compelled to grant the requested relief, as it falls within the scope of the *commercial* information that is to be

protected under Fed. R. Bankr.P. 9018(1). The whole point of that provision is to protect business entities from disclosure of information that could reasonably be expected to cause the entity commercial injury. XO does not deny that it wants to derail approval of the STT transaction; it merely argues that it is within its rights to do so. Though IDT professes to care only about the national interest, and not its own commercial desires, its point is similar. Their contentions may or may not be true, but the Debtors and all of their other creditors are entitled to protection from such an effort.

The decision in *In re Farmland Industries*, 290 B.R. 364 (Bankr.W.D.Mo.2003) (Venters, J.), which protected commercially sensitive information notwithstanding a considerable sensitivity to public policy favoring open proceedings and the First Amendment values noted by the press, underscores the basis for granting relief. With a thoughtful discussion, which need not be repeated at comparable length here, Judge Venters, under Fed. R. Bankr.P. 9018, protected from disclosure dates by which the debtors in that case were required to market assets, and information with respect to debtor liquidity, where disclosure could impair the estate's ability to maximize value for its creditors as part of an asset sales process. *Id.* at 369. The teaching of *Farmland Industries* is that the commercial information that is entitled to protection under Code section 107(b) and Bankruptcy Rule 9018 must be viewed from the practical perspective of damage to the estate or its creditors, and squarely includes information that could prejudice either of them as part of a sale process. If the STT transaction is to be derailed (and the Court expresses no view as to whether

---

with foreign persons. It was further amended by section 837 of the National Defense

Authorization Act for Fiscal Year 1993.

that is a good or bad thing), it should be as a consequence of the needs and concerns of CFIUS, and not of those, like XO and IDT, with private agendas.

The facts relating to the Wall Street Journal and Reuters present a different situation and raise different concerns, but the end result necessarily must be the same. The Court sees no basis for a finding that either the Wall Street Journal or Reuters would have the purpose of trying to injure the Debtors or thwart a transaction that the Debtors and their unsecured creditors desire, but disclosure of CFIUS information could have that effect. Indeed, the publication of the CFIUS information could, indirectly, undo everything the Court believes its needs to do, directly, with respect to XO and IDT.

 The letter briefs filed by the Wall Street Journal and Reuters makes a number of observations with respect to the judicially-recognized interest that all Americans have under the First Amendment and common law to judicial proceedings. The news organizations speak to values that this Court shares. But as Reuters recognizes, rights of access to matters of public interest being litigated in the courts are not absolute, but rather exist "absent compelling reasons."[9] And as the Wall Street Journal puts it, "the right to attend judicial proceedings is not unlimited," and "may be restricted where overriding interests ... are involved."[10] Here there are just such overriding interests involved, for the reasons the Court stated above. The Court notes that the Debtors have not been overbroad in their request, and that they have sought to exclude the press only from the limited por-

tions of the hearing that will involve CFIUS matters.

The Wall Street Journal continues that assuming, *arguendo*, that the Debtors are able to carry the necessary burden on any portion of the testimony concerning the CFIUS approval process, any order of closure should be "narrowly tailored" so as to allow as much public access as possible.[11] That is clearly correct. And that will be done here.

---

**9.** Letter Obj. of Reuters at 1 (ECF # 3322).

**10.** Letter Obj. of Dow Jones at 1 (ECF # 3320).

