**In re ALTERRA HEALTHCARE CORPORATION, Debtor.**

No. 03–10254 (MFW).

United States Bankruptcy Court, D. Delaware.

Oct. 16, 2006.

Joseph M. Barry, Robert S. Brady, Sean T. Greecher, Joseph A. Malfitano, Edmon

L. Morton, James L. Patton, Young, Conaway, Stargatt & Taylor, Laurie Selber Silverstein, Potter Anderson & Corroon LLP, Karen V. Sullivan, Oberly, Jennings & Rhodunda, PA, Alfred Villoch, III, Buchanan Ingersoll PC, Wilmington, DE, Susan B. Morrison, Kevin P. O'Brien, Wilkes & McHugh P.A., Tampa, FL, for Debtor.

### OPINION [1]

MARY F. WALRATH, Bankruptcy Judge.

Before the Court is the Motion of the Philadelphia Newspapers, LLC (the "Newspaper") to Intervene for the Limited Purpose of Seeking Access to Judicial Records and Proceedings ("Motion to Intervene") and its related Motion for Access to Judicial Records and Proceedings ("Motion for Access") which asks the Court to vacate several Orders sealing records of settlements in this case. The Motions are opposed by the Reorganized Debtor. For the reasons set forth below, the Court will grant the Motions.

## I. BACKGROUND

On January 22, 2003, Alterra Healthcare Corporation ("Alterra") filed a voluntary petition for reorganization under chapter 11 of the Bankruptcy Code. The Court approved Alterra's plan of reorganization on November 26, 2003. The reorganization plan required the Reorganized Debtor to submit for Court approval any claims settled in excess of $250,000.

On November 26, 2003, Alterra filed with the Court Motions to approve three agreements settling tort claims of the Estates of Delcia D. Lamphere, Pauline McReynolds, and Maudine Kemp. Two of the settlements were in excess of $250,000.

None of the settlement agreements were sealed.

On March 24, 2005, the Reorganized Debtor, pursuant to section 107(b) of the Bankruptcy Code, filed a Motion to File under Seal the Application to Approve Nine Settlements by and among the Debtor and Various Claimants (the "Seal Motion"). The nine settlement agreements involved tort claims which sought relief in excess of $250,000. There were no objections to the Seal Motion. Accordingly, on April 27, 2005, the Court granted the Seal Motion. The nine settlement agreements were then filed under seal on April 29, 2005, and approved by the Court on May 25, 2005. The Reorganized Debtor filed a second Motion to file settlement agreements under seal on July 7, 2005, which was not opposed. That motion to seal was granted by the Court on July 27, 2005.

In addition to the Motions to seal the settlements, the Reorganized Debtor filed a Motion to set a reserve for personal injury claims (the "Reserve Motion") and a Motion to file under seal the Exhibit to the Reserve Motion. The Motion to seal was not opposed, and on January 31, 2006, the Court granted it. On February 10, 2006, the Court granted the Reserve Motion and approved an aggregate reserve of $32 million for the unresolved tort claims.

The Newspaper filed its Motion to Intervene on June 30, 2006, and the corresponding Motion for Access on July 30, 2006. The Motion for Access asked the Court to vacate its Orders sealing the records relating to the settlements and reserves for personal injury claims. The Reorganized Debtor opposed the Motions. Oral argument was heard on the Motions on August

---

1. This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure, which is made applicable to contested matters by Rule 9014 of the Federal Rules of Bankruptcy Procedure.

7, 2006. Briefing is complete and the matter is ripe for decision.

## II. JURISDICTION

This is a core proceeding over which the Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1334(b) & 157(b)(2)(A).

## III. DISCUSSION

### A. Standing

■ The Newspaper asserts that the public has a right to access the sealed documents under the First Amendment, federal common law, and section 107 of the Bankruptcy Code. Further, the Newspaper contends that it has an independent right separate from the public to gain access to the information. The Reorganized Debtor has not contested the Newspaper's standing to intervene as a third party seeking to challenge the Seal Orders and thus obtain access to the sealed information.

The Court concludes that the Newspaper does have standing. Although the Newspaper asserts "rights that may belong to a broad portion of the public at large," the Newspaper has standing because it asserts an actual injury to itself. *United States v. Cianfrani*, 573 F.2d 835, 845 (3d Cir.1978). To find standing, the Court must "only find that the Order . . . being challenged presents an obstacle to the Newspapers' attempt to obtain access" and that a decision to unseal the agreements would remedy the injury. *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 777 (3d Cir.1994). In this case, the Newspaper has sufficiently established that the Seal Orders prevent it from obtaining access and that the vacation of those Orders will redress the alleged harm. Accordingly, the Court concludes that the Newspaper has standing in the present case to seek intervention.

### B. Motion to Intervene

#### 1. Proper Procedure for Access

■ The Reorganized Debtor argues that the Newspaper's Motion to Intervene for the purpose of accessing the sealed agreements is an improper collateral attack on the Court's Seal Orders. Further, the Reorganized Debtor assumes that the Motion for Access was filed under Rule 60(b) of the Federal Rules of Civil Procedure but argues that a Rule 60(b) motion is not the proper procedural mechanism for challenging the Court's alleged legal error. Rather, the Reorganized Debtor argues that an appeal is the proper mechanism for seeking relief from the Court's Orders.

The Newspaper contends that the Motion to Intervene and the corresponding Motion for Access are the proper procedure. The Newspaper relies upon Third Circuit case law and Bankruptcy Rule 2018(a) as the authority for its Motions to Intervene and Access.

The Court agrees with the Newspaper. Under Rule 2018(a) of the Federal Rules of Bankruptcy Procedure, the Court may permit a party "to intervene generally or with respect to any specified matter" in a bankruptcy case "after hearing on such notice as the court directs and for cause shown." Rule 24(b) of the Federal Rules of Civil Procedure also provides for permissive intervention and is made applicable to bankruptcy proceedings by Rule 2018(a).[2] The Third Circuit has held that

---

**2.** Rule 24(b) provides that

Upon timely application anyone may be permitted to intervene in an action: (1)

when a statute of the United States confers a conditional right to intervene; or (2) when an applicant's claim or defense and

parties seeking to challenge an order sealing records must "meet the requirement of Fed.R.Civ.P. 24(b)(2) that their claim must have 'a question of law or fact in common' with the main action." *Id.* at 778 (citations omitted) (concluding that "[we] agree with other courts that have held that the procedural device of permissive intervention is appropriately used to enable a litigant who was not an original party to an action to challenge protective or confidentiality orders entered in that action."). Accordingly, the Court concludes that the Motion to Intervene was the proper procedural mechanism to seek access to the sealed documents.

### 2. *Timeliness*

■ The Reorganized Debtor contends that the Newspaper's Motion to Intervene was untimely because it was filed over a year after the initial Seal Order. The Reorganized Debtor admits that Rule 2018(a) does not specify a time limit for interested parties seeking intervention. Nonetheless, it argues that the Court should consider passage of time and the resultant delay in administration of the estate when evaluating a motion to intervene. *See* 9 *Collier on Bankruptcy* ¶ 2018.08 (15th ed. Rev.2006); *Prin Corp. v. Altman (In re Altman),* 265 B.R. 652 (Bankr.D.Conn.2001).

The Court disagrees with the Reorganized Debtor's argument. The *Altman* case is inapplicable because it analyzed the timeliness of a creditor's motion to intervene in an adversary proceeding under Rule 7024. 265 B.R. at 654–55. In that case, the Court concluded that the motion was untimely because discovery had concluded. *Id.*

More compelling is the Third Circuit's decision in *Pansy.* In *Pansy,* the Third Circuit addressed an issue similar to the one at bar and concluded that challenges to "confidentiality orders may take place long after a case has been terminated." 23 F.3d at 779. The *Pansy* Court cited precedent that held a "court may properly consider a motion to intervene permissively for the limited purpose of modifying [or vacating] a [confidentiality] order even after the underlying dispute between the parties has long been settled." *Leucadia, Inc. v. Applied Extrusion Techs., Inc.,* 998 F.2d 157, 161 n. 5 (3d Cir.1993). The issue of the validity of a "confidentiality order over a settlement agreement" is "a question ancillary to the underlying suit." *Pansy,* 23 F.3d at 780 n. 7. "[W]here an intervenor is litigating an ancillary issue, the potential for prejudice to the original parties due to the delay in intervention is minimized." *Id.* at 779 (*citing Pub. Citizen v. Liggett Group, Inc.,* 858 F.2d 775 (1st Cir.1988)).

In addition, the Third Circuit noted that if courts did not allow third parties to intervene late in a suit (or even after the suit has ended) to challenge a confidentiality order, then some third parties would not "have their day in court." Id. at 780. The Court explained that

> in cases dealing with access to information, the public and third parties may often have no way of knowing at the time a confidentiality order is granted what relevance the settling case has to their interests.

> Therefore, to preclude third parties from challenging a confidentiality order once a case has been settled would often make it impossible for third parties to

the main action have a question of law or fact in common.

Fed.R.Civ.P. 24(b).

have their day in court to contest the scope or need for confidentiality. *Id.*

Other Circuits have also allowed permissive intervention for the purpose of access to sealed records more than a year after the underlying lawsuit was settled. *See Beckman Indus. v. Int'l Ins. Co.*, 966 F.2d 470, 473 (9th Cir.1992) (approving motion to intervene approximately two years after dispute settled); *United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1427 (10th Cir.1990) (allowing intervention to challenge protective order under Rule 24(b) three years after case settled).

The Reorganized Debtor cites the *Pansy* case for the proposition that the Motion to Intervene should be denied because of the circumstances of this case. In that case, the Third Circuit acknowledged that "in some circumstances a trial court, in the exercise of its discretion, may rightly conclude that untimeliness or other factors relating to the particular claimant justify refusal of intervention where the intervenors seek to contest an ancillary issue." *Pansy*, 23 F.3d at 780 n. 9.

Such circumstances are present here, the Reorganized Debtor contends, because the Newspaper had knowledge of the settlements shortly after the agreements were made but engaged in gamesmanship by waiting until the settlement motions were filed, thus becoming public records, before seeking to intervene. The Reorganized Debtor asserts that it would not have filed the settlements with the Court if it had known the Court may unseal them later.

The Court rejects these arguments. Because the settlements could not be effective unless they were filed and approved by the Court, the Court does not accept the Reorganized Debtor's assertion that it would not have filed the settlements if it had known they would be unsealed.

Further, "even though the parties to [a] settlement agreement have acted in reliance upon [a seal] order, they [do] so with knowledge that under some circumstances such orders may be modified by the court." *Hartford v. Chase*, 942 F.2d 130, 138 (2d Cir.1991) (Pratt, J., concurring). Consequently, the Court concludes that the Motion to Intervene was timely filed.

### 3. *Undue Prejudice*

■ The Reorganized Debtor argues that the intervention will prejudice its rights and those of third party creditors. It asserts that it will be forced to litigate all unresolved personal injury claims which will result in more attorneys' fees and will delay distributions to creditors. It posits that the insurance companies will find it more difficult to settle future claims if the details of prior settlements are revealed. Moreover, the Reorganized Debtor contends that the competitors of its insurers, Liberty International Underwriters and Liberty Surplus Insurance Corporation ("Liberty"), will obtain an unfair advantage by having knowledge of Liberty's business practices. *See, e.g., In re Pub. Serv. Co.*, 88 B.R. 546, 554 (Bankr.D.N.H. 1988) (concluding that a court must consider any undue delay and possible prejudice a party-in-interest may suffer when determining an intervention motion) (citations omitted).

In this case, however, the Court agrees with the Newspaper. The Reorganized Debtor has not articulated sufficient prejudice to it to warrant denial of the motion to intervene. For example, the Court is not persuaded that every unsettled claimant will seek litigation over settlement. *See Pansy*, 23 F.3d at 788. Some claimants who want to avoid the time and expense of a lengthy trial may consider settlement a more favorable option. Additionally, because the Debtor's insurance is not unlim-

ited and the amount placed in reserve is capped, tort claimants may seek an early settlement to ensure they receive a significant share of the shrinking pie.

Moreover, the Reorganized Debtor filed three unsealed settlements before the nine sealed settlements were reached. The three unsealed settlements did not preclude a resolution of the nine claims. Therefore, the Court finds unpersuasive the Reorganized Debtor's argument that disclosure will impair its ability to settle future claims. Consequently, the Court concludes that no undue prejudice will result. Thus, the Court will grant the Motion to Intervene.

## C. Motion for Access

The Newspaper asserts that it has a right of access under the First Amendment, federal common law, and section 107(a) of the Bankruptcy Code. The Reorganized Debtor argues that access is not available under any theory.

### 1. First Amendment

■ The Third Circuit has extended the First Amendment right of access to civil proceedings. *Publicker Indus., Inc. v. Cohen,* 733 F.2d 1059, 1070 (3d Cir. 1984). "[T] o limit the public's access to civil trials there must be a showing that the denial serves an important governmental interest and that there is no less restrictive way to serve that governmental interest." *Id. (citing Globe Newspaper Co. v. Superior Court,* 457 U.S. 596, 606–07, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982); *Brown & Williamson Tobacco Corp. v. F.T.C.,* 710 F.2d 1165, 1179 (6th Cir.1983)). A First Amendment right of access applies if (1) "the place and process have historically been open to the press and general public" and (2) "public access plays a significant positive role in the functioning of the particular process in question."

*Press–Enter. Co. v. Superior Court,* 478 U.S. 1, 8, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986).

### a. Public Access to Papers

The Reorganized Debtor argues that no court has held that a First Amendment right to access applies to settlement agreements. Rather, the Reorganized Debtor argues that private settlement agreements traditionally have taken place outside the ambit of the public eye. It further asserts that in the non-bankruptcy context, statutory law does not require the filing of settlements over a certain threshold amount, thus the agreements do not typically become public records.

The Newspaper counters that bankruptcy proceedings are different. Such cases have historically been open to the press and general public.

■ The Court agrees with the Newspaper's position. There is a strong presumption in favor of public access to bankruptcy proceedings and records. During a chapter 11 reorganization, a debtor's affairs are an open book and the debtor operates in a fish bowl. *See* Brad B. Erens & Kelly M. Neff, *Confidentiality in Chapter 11,* 22 Emory Bankr.Dev. J. 47, 49 (2005) ("The proposition that a chapter 11 reorganization proceeding be an open book process, however, is heavily ingrained in bankruptcy jurisprudence. As a result, it is not likely that there will be any effort to modify the openness of such a proceeding anytime in the near future."); Jeff J. Friedman & Merritt A. Pardini, *Bankruptcy Behind Closed Doors (Part I),* 21 No. 12 Bankr.Strategist 1 (2004) ("One of the burdens of a bankruptcy filing is that, to a degree, the debtor's affairs become an open book. This openness has been accurately described as operating in a 'fishbowl'."); Mark D. Bloom, David M. Olenczuk, & Richard L. Wynne, *Reorganizing*

*in a Fish Bowl: Public Access v. Protecting Confidential Information,* 73 Bankr. Dev. L.J. 775 (1999) (detailing the public's right of access in bankruptcy cases).

In fact, Congress has codified the historical practice of open access in bankruptcy. *See* 11 U.S.C. § 107(a) (2006). See *also In re Northstar Energy, Inc.,* 315 B.R. 425, 428 (Bankr.E.D.Tex.2004) (stating "[Section] 107(a)'s directive for open access flows from the nature of the bankruptcy process—which is heavily dependent upon creditor participation, and which requires full financial disclosure of debtor's affairs."); *In re Muma Servs., Inc.,* 279 B.R. 478, 484 (Bankr.D.Del.2002) (noting section 107(a)'s prescription for public accessibility in bankruptcy cases); *In re Epic Assocs. V,* 54 B.R. 445, 447 (Bankr.E.D.Va.1985) (concluding that "[s]ection 107(a) creates a presumption in favor of public access to court records filed in bankruptcy cases").

■ Accordingly, in light of Congressional intent and the practice in bankruptcy proceedings, the Court concludes that documents filed in bankruptcy cases have historically been open to the press and general public.

### b. *Role Public Access Plays in Process*

■ The Newspaper argues that public access to the settlements is important because knowledge of the extent of the abuse and neglect at Alterra's facilities will aid the public in evaluating the effectiveness of government regulation of assisted living facilities. Specifically, the Newspaper contends that the information in the settlement agreements will show what impact Alterra's financial condition had on any alleged neglect of the Alterra residents. The Newspaper further asserts that access will assist the public in understanding the settlement process and help it gauge the merits of each claim settled.

The Reorganized Debtor, on the other hand, argues that providing access to settlement agreements filed in bankruptcy cases discourages settlements and damages the reputation and financial condition of the Reorganized Debtor. Consequently, the Reorganized Debtor asserts that access to the settlements is not important to the process.

The Court agrees with the Reorganized Debtor. The public already has access to the allegations of neglect and abuse which are detailed in the complaints. The Court cannot conceive of any positive role access to the settlements could play in enabling the public to gauge the effectiveness of government regulation of the facilities. The Court also disagrees with the Newspaper's argument that comparison of the amounts of two separate settlements would show the relative value or merits of the two claims. Parties settle disputes for many reasons, not solely because of the merits.

Therefore, the Court concludes that the second prong of the First Amendment analysis is not satisfied in this case. Consequently, the Court concludes that there is no constitutional right of access to the sealed settlements.

### 2. *Common Law*

■ The Newspaper asserts alternatively that there exists a federal common law right of access to sealed settlements in civil cases. The Reorganized Debtor responds that section 107 of the Bankruptcy Code supplanted the common law right of access as it applies to bankruptcy proceedings.

The Court agrees with the Reorganized Debtor. Section 107(a) of the Bankruptcy Code provides that "[e]xcept as provided in subsections (b) and (c) of this section, and subject to section 112, a paper filed in

a case under this title and the dockets of a bankruptcy court are public records and open to examination by an entity at reasonable times without charge." 11 U.S.C. § 107(a). Section 107(a) is "a codification of the common law general right to inspect judicial records and documents." *In re Nunn,* 49 B.R. 963, 964 (Bankr.E.D.Va. 1985) *(citing Nixon v. Warner Commc'ns, Inc.,* 435 U.S. 589, 597–98, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978)). *See also In re Orion Pictures Corp.,* 21 F.3d 24, 26 (2d Cir.1994) (stating that the "policy of open inspection, codified generally in § 107(a) of the Bankruptcy Code, evidences [C]ongress's strong desire to preserve the public's right of access to judicial records in bankruptcy proceedings").

 Where a legislatively enacted regulatory scheme speaks "directly to a question," courts should not supplement or modify the scheme by reference to federal common law. *Milwaukee v. Illinois,* 451 U.S. 304, 315, 101 S.Ct. 1784, 68 L.Ed.2d 114 (concluding that the Court's " 'commitment to the separation of powers is too fundamental' to continue to rely on federal common law ... when Congress has addressed the problem."). Because Congress has provided a specific provision which deals with the right to access public records in bankruptcy proceedings, the Court should not encroach upon the province of Congress. Accordingly, the Court will not analyze the issue under federal common law.

### 3. *Statutory Analysis*

As noted above, section 107(a) creates a presumption that papers filed in bankruptcy court are public records. *Muma Servs.,* 279 B.R. at 484. Congress has, however, provided a few limited exceptions to this general rule. *See* 11 U.S.C. § 107(b) & (c). Specifically, the Code provides that

(b) On request of a party in interest, the bankruptcy court shall, and on the bankruptcy court's own motion, the bankruptcy court may—

> (1) protect an entity with respect to a trade secret or confidential research, development, or commercial information; or

> (2) protect a person with respect to scandalous or defamatory matter contained in a paper filed in a case under this title.

11 U.S.C. § 107(b).

The Reorganized Debtor argues that the information contained in the settlement agreements is confidential or commercial information within the meaning of section 107(b). The Reorganized Debtor asserts that disclosure of the information would (1) create an unfair advantage to unsettled claimants; (2) cause harm to unsecured creditors; (3) disadvantage the claimants who already settled; (4) provide competitors an unfair advantage through knowledge of its tort claims settling process; (5) hinder its ability to obtain insurance coverage; and (6) result in negative publicity. The Court finds the proffered assertions unpersuasive.

 Commercial information is information which would result in "an unfair advantage to competitors by providing them information as to the commercial operations of the debtor." *In re Orion Pictures Corp.,* 21 F.3d at 27–28 *(citing Ad Hoc Protective Comm. for 10 1/2% Debenture Holders v. Itel Corp. (In re Itel Corp.),* 17 B.R. 942, 944 (9th Cir. BAP 1982)). "[D]isclosure of [the] information [must] reasonably be expected to cause the entity commercial injury." *Northstar Energy,* 315 B.R. at 429 *(citing In re Global Crossing, Ltd.,* 295 B.R. 720, 725 (Bankr. S.D.N.Y.2003)). Moreover, the Court must find that information contained in the

sealed settlement agreements "is so critical to the operations of the entity seeking the protective order that its disclosure will unfairly benefit that entity's competitors." *In re Barney's, Inc.*, 201 B.R. 703, 708–09 (Bankr.S.D.N.Y.1996) (citation omitted).

■ The Court concludes that the information in the settlements is not confidential commercial information. It does not relate to the Reorganized Debtor's commercial operations nor does it unfairly advantage competitors. *Cf., Orion Pictures*, 21 F.3d at 27–28 (holding that a license agreement authorizing a licensee "to reproduce, manufacture, distribute, and sell videocassettes of three films" contained confidential commercial information); *Northstar Energy*, 315 B.R. at 430–31 (holding that a list of investors in the debtor's oil and gas business was confidential commercial information); *Farmland Indus.*, 290 B.R. 364, 369–70 (Bankr. W.D.Mo.2003) (holding time lines for marketing and selling assets established in a financing agreement between the debtor and pre-petition lenders were confidential and commercial); *In re Frontier Group, LLC*, 256 B.R. 771, 773–74 (Bankr. E.D.Tenn.2000) (finding that a list of physicians, who were placed in temporary places of employment by the debtor placement agency, was commercial in nature); *Barney's*, 201 B.R. at 709 (concluding that for a retailer, confidential commercial "information might include, without limitation, pricing formulae, short and long term marketing strategies and the terms of agreements with suppliers.").

The Reorganized Debtor is in the business of providing assisted living arrangements and healthcare to elderly residents with Alzheimer's and other geriatric related diseases. Therefore, the monthly charges for housing elderly residents in one of the assisted living facilities would relate to the business's commercial operations. The average cost of caring for the elderly residents is also commercial and sensitive in nature. None of that commercial information is implicated here.

The Reorganized Debtor argues that if the unsettled claimants are privy to the settlement amounts, the claimants will use this information as leverage to force higher settlements in their respective cases. An unfair advantage to a tort claimant (creditor) of a debtor, however, does not create an unfair advantage to its market competitors.

The Reorganized Debtor also contends that the disclosure will cause harm to the general unsecured creditors by reducing the value of the estate. The Reorganized Debtor argues that if the unsettled claimants bargain for higher settlement amounts, the non-tort general unsecured creditors will receive a lower distribution. The Court is unpersuaded. The insurer Liberty is responsible for defending the unresolved claims up to its policy limits. The Reorganized Debtor has also set aside a reserve of $32 million for these unresolved tort claimants. Thus, it is unclear if the release of this information will impact the other creditors of the Reorganized Debtor.

Similarly, the assertion that the claimants who already settled will be disadvantaged because they were not privy to the settlement amounts in the others' suits is irrelevant. The test is whether competitors will gain an unfair advantage. Further, those claimants did have access to the three settlement agreements that were filed unsealed.

■ The Court also does not agree with the fourth and fifth points of contention. The Reorganized Debtor has failed to show how the process of handling tort claims is a critical part of its operations and would result in an unfair advantage in

the hands of its competitors. The Reorganized Debtor's concern that competitors may use the allegations contained in the tort claims in their marketing material to attract its customers does not support keeping the settlement agreements sealed because all the facts relating to the injuries (except the dollar amount of the settlements) are already a matter of public record. Moreover, three prior settlements were not sealed. Therefore, the harm (if any) has already been felt. Furthermore, the possibility that disclosure will result in negative publicity or embarrassment to a company is not a ground for sealing records under section 107(b). *Muma Servs.*, 279 B.R. at 484.

Additionally, although the Reorganized Debtor's witness, Alterra's Director of Legal Affairs, testified that insurance providers base coverage on whether a company seeks confidentiality agreements in its settlement process, the Court is not convinced that coverage will be denied or premiums will be higher if the Court unseals these records.

The Court concludes that the information in the sealed settlement agreements does not relate to the commercial operations of the Reorganized Debtor. Accordingly, the Court concludes that section 107(b) is not applicable. Consequently, the information should be a matter of public record under section 107(a).

## IV. *CONCLUSION*

For the foregoing reasons, the Court will grant the Newspaper's Motions to Intervene and for Access. The Court's Orders sealing the settlement agreements and exhibit to the Reserve Motion will be vacated.

An appropriate Order is attached.